No. 25–1110 & No. 25–1531

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

*J. ALEX HALDERMAN,*

*Plaintiff-Appellee*,

v.

*HERRING NETWORKS, INC., d/b/a One America News Network;*
*CHARLES HERRING; and ROBERT HERRING, SR.,*

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Hon. David M. Lawson
District Court Case No. 2:24-mc-51057

---

### Brief of Appellants Herring Networks, Inc.,
### Charles Herring, and Robert Herring, Sr.

---

| | |
|---|---|
| Joseph E. Richotte | Charles L. Babcock |
| Michigan Bar No. P70902 | Texas Bar No. 01479500 |
| Jennifer A. Dukarski | Christina M. Vitale |
| Michigan Bar No. P74257 | Texas Bar No. 24077610 |
| BUTZEL LONG, PC | JACKSON WALKER LLP |
| 101 N. Main St. #200 | 1401 McKinney St. #1900 |
| Ann Arbor, MI  48104 | Houston, TX 77010 |
| T: (734) 995-3110 | T: (713) 752-4200 |
| richotte@butzel.com | cbabcock@jw.com |
| dukarski@butzel.com | cvitale@jw.com |

Counsel for Defendants-Appellants

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, the OAN Defendants make the following disclosures: (1) none of the OAN Defendants is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, and (2) there is no publicly owned corporation, not a party to the appeal, with a financial interest in the outcome of this appeal.

### TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement .................................................................ii

Table of Contents ...................................................................................... iii

Table of Authorities..................................................................................vi

Statement in Support of Oral Argument......................................................ix

Introduction ................................................................................................ 1

Statement of Jurisdiction ........................................................................... 2

Statement of Issues .................................................................................... 4

Statement of the Case ................................................................................ 5

    I.    Factual Background ........................................................... 5
    II.   Procedural Background ........................................................ 11

Summary of the Argument....................................................................... 14

Argument ................................................................................................ 17

    I.    This Court's review is for abuse of discretion........................... 17
    II.   The district court abused its discretion by quashing the
           subpoena. ................................................................................ 18

         A.    The district court clearly erred on the facts by
             disregarding Halderman's unique factual knowledge
             that was sought through the subpoena. ...........................20

             1.    The district court disregarded the facts that
                  Halderman (and only Halderman) knows...............20
             2.    The OAN Defendants aim to elicit factual
                  information from Halderman, not opinion
                  testimony. ...........................................................27

B.     The district court clearly erred on the facts by ignoring the OAN Defendants' offer to compensate Halderman. ....................................................................35

C.     The district court abused its discretion by misapplying the law to the facts. ....................................38

     1.     Unlike other "unwilling expert" cases, Halderman has first-hand knowledge of disputed factual matters. .......................................38

     2.     Halderman's unique personal knowledge of facts cannot be duplicated elsewhere. ....................42

     3.     The district court improperly pre-judged the merits in determining that the benefits of Halderman's testimony fail to outweigh the burden of a deposition. ...........................................46

D.     The district court applied the wrong legal standard. ........52

     1.     A fact witness does not have to contemporaneously witness the occurrence in dispute. ....................................................................52

     2.     A jury, not the district court, is entitled to weigh the merits of the substantial-truth defense. ................................................................54

     3.     The district court erroneously construed the exception in Rule 45(c)(3)(B)(ii). ...........................55

III.     The district court abused its discretion in denying the OAN Defendants' motion for reconsideration. ...................................58

A.     Newly produced evidence by the Michigan Department of State called into question the district court's order on quashal. ...............................................58

B.     Testimony from Dominion's leadership further undercut the district court's quashal order. ....................60

C.     The district court legally erred in determining the significance of new evidence and in denying reconsideration. ............................................................61

Conclusion ..................................................................................65

iv

Certificate of Compliance ................................................................. 67

Certificate of Service ...................................................................... 68

Addendum ......................................................................................... 69

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Thompson*,
   80 A.3d 177 (D.C. 2013) ........................................................................ 6

*Bailey v. Antrim County*,
   Case No. 2020-9238-CZ (Mich. Cir. Ct.— Antrim Cty. Dec.
   4, 2020) .................................................................................................. 44

*Betts v. Costco Wholesale Corp.*,
   558 F.3d 461 (6th Cir. 2009) ................................................................ 17

*Concrete Pipe & Products of California, Inc. v. Constr. Laborers
   Pension Tr. for S. California*,
   508 U.S. 602 (1993) .............................................................................. 18

*Coomer v. Lindell*,
   No. 22-cv-01129 (D. Colo. June 12, 2025) ............................................ 49

*Darnell v. Arthur*,
   782 F. App'x 413 (6th Cir. 2019) .......................................................... 18

*Doering v. Koppelberger*,
   No. 343196, 2019 WL 4732725 (Mich. Ct. App. Sept. 26,
   2019) .................................................................................. 25, 39, 40, 53

*FCA US, LLC v. Wubbolts*,
   No. 23-1876, 2024 WL 3103755 (6th Cir. June 24, 2024) .................... 17

*Green v. Bank of Am. Corp.*,
   530 F. App'x 426 (6th Cir. 2013) .......................................................... 17

*Griffith v. Comm'r of Soc. Sec.*,
   987 F.3d 556 (6th Cir. 2021) ................................................................. 17

*Kaufman v. Edelstein*,
   539 F.2d 811 (2d Cir. 1976) ......................................................... *passim*

*Kissel v. Nelson Packing Co.*,
  87 Mich. App. 1 (1978) ........................................................ 25

*Klabunde v. Stanley*,
  384 Mich. 276 (1970) .......................................................... 28

*Lyons v. My Pillow, Inc.*,
  No. 23-1308, 2023 WL 8450724 (6th Cir. Dec. 6, 2023) ...................... 17

*McCook Metals LLC v. Alcoa, Inc.*,
  249 F.3d 330 (4th Cir. 2001) ................................................. 3

*Newman v. Howard Univ. Sch. of Law*,
  715 F. Supp. 3d 86 (D.D.C. 2024) ........................................... 54

*Nicholas v. Wyndham Int'l, Inc.*,
  373 F.3d 537 (4th Cir. 2004) ................................................. 4

*In re Schaefer*,
  331 F.R.D. 603 (W.D. Pa. 2019) ............................................. 19

*Stone v. High Mountain Mining Co., LLC*,
  No. 19-CV-1246-WJM-STV, 2022 WL 1183724 (D. Colo.
  Apr. 21, 2022) ............................................................... 19

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
  301 F.R.D. 20 (D.D.C. 2014) ................................................ 62

*U.S. Dominion, Inc. v. Herring Networks, Inc.*,
  No. 1:21-cv-02130 (D.D.C.) ................................................... 3

*United States v. Grubbs*,
  773 F.3d 726 (6th Cir. 2014) ................................................ 18

**Statutes**

28 U.S.C. § 1332 ................................................................ 3

**Rules**

Fed. R. App. P. 4(a)(1)(A) .................................................. 3, 4

Fed. R. App. P. 4(a)(4)(A)(iv) ................................................. 4

Fed. R. App. P. 4(a)(4)(B)(ii) .......................................................... 4

Fed. R. App. P. 32, I................................................................. 67

Fed. R. App. P. 32(f) ............................................................... 67

Fed. R. Civ. P. 45 ............................................................ *passim*

Fed. R. Civ. P. 45(d)(3) ................................................. 3, 12, 19

Fed. R. Civ. P. 45(d)(3)(B)(ii) .......................................... *passim*

Fed. R. Civ. P. 45(d)(3)(C) ........................................................ 19

Fed. R. Civ. P. 45(d)(3)(C)(ii) ................................................... 37

Fed. R. Civ. P. 59(e) ........................................................ 3, 13, 17

Fed. R. Civ. P. 62.1 ................................................................ 13

**Other Authorities**

Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2466 (3d ed.)......................... 4

Steven Nelson, *Michigan Republicans Claim Software Issue
    Undercounted Trump Votes*, N.Y. POST (Nov. 6, 2020)....................... 7, 21

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Court should hear argument in this appeal from the district court's decisions to quash a subpoena to Plaintiff-Appellee Halderman. Defendants-Appellants (the "OAN Defendants") sought Halderman's deposition testimony as relevant and critical to their defense in an underlying defamation action involving important First Amendment free speech rights and over $1.6 billion in damages alleged by U.S. Dominion, Inc. and its affiliates (collectively, "Dominion"). The district court's orders rest on a series of legal errors and misapplications of the governing standards, as well as a misunderstanding of the record and the defenses at issue. The issues presented are factually and legally complex. Oral argument will assist the Court in resolving these important issues and ensure that its decision rests on a complete understanding of the law and facts.

**INTRODUCTION**

These consolidated appeals about a quashed subpoena relate to a defamation case pending in federal court in D.C., in which Dominion sued the OAN Defendants seeking over $1.6 billion in damages. Dominion's allegations attack OAN media reports that Dominion software glitches—and not solely human error—caused problems, such as vote miscounts and declaring the wrong winner in the November 2020 election ("2020 Election"), like those experienced in Antrim County, Michigan. Dominion's lawsuit implicates significant free speech rights at the apex of the First Amendment.

To defend themselves in the underlying case, the OAN Defendants sought a short, paid deposition of third party J. Alex Halderman. Halderman had immediately injected himself in the public debate about the Antrim County vote count controversy, and five weeks later was retained as an expert by Michigan state officials and given unfettered forensic access to the Dominion election management system at the controversy's center. Halderman even gave press interviews discussing his factual knowledge about vote flipping and hacking voting machines before he was retained as a

compensated expert, and one of those interviews was extensively quoted in an OAN broadcast challenged by Dominion.

Yet the district court below quashed the properly issued Rule 45 subpoena. It did so even though Halderman involved himself in the Antrim County controversy long before he was retained as an expert, and indeed was quoted and pictured as a source of information in one of the broadcasts Dominion claims is defamatory. In the process, the court ignored that Halderman personally obtained unique factual information that no party—not even Dominion's engineers—possessed with regard to Antrim County. It also ignored that the OAN Defendants expressly offered to pay Halderman his regular hourly rate. And the court wrongly held that all facts learned (even those prior to being retained as an expert) are off limits from discovery, and mistreated every fact known to Halderman as if it were privileged "expert opinion." The district court misapplied the law, committed clear factual error, and otherwise abused its discretion. Reversal is warranted.

### STATEMENT OF JURISDICTION

The United States District Court for the Eastern District of Michigan derived its subject-matter jurisdiction over this ancillary proceeding from the

jurisdiction of the underlying case. *See* Fed. R. Civ. P. 45(d)(3) (motion to quash third party subpoena properly brought in "the court for the district where compliance is required"); *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 333–34 (4th Cir. 2001) (ancillary court's power to issue and enforce subpoenas is dependent on jurisdiction of court where underlying action is pending). The underlying action is pending in the United States District Court for the District of Columbia, *see U.S. Dominion, Inc. v. Herring Networks, Inc.*, No. 1:21-cv-02130 (D.D.C.), which has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Dominion and the OAN Defendants, and the amount in controversy exceeds $75,000.00.

These consolidated appeals, Nos. 25–1110 & 25–1531, respectively challenge (1) the district court's January 24, 2025 order granting Halderman's motion to quash the OAN Defendants' subpoena, and (2) the district court's May 19, 2025 order denying the OAN Defendants' Rule 59(e) motion to reconsider. The first notice of appeal was timely filed on February 4, 2025, within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A). The second notice of appeal was timely filed on June 10,

2025, within the 30-day period prescribed by Federal Rules of Appellate Procedure 4(a)(1)(A), 4(a)(4)(A)(iv), and 4(a)(4)(B)(ii).

"[A]n order denying discovery from a nonparty in an ancillary proceeding where the underlying lawsuit is pending in another circuit is immediately appealable as a collateral order." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 541–542 (4th Cir. 2004) (collecting cases); *see also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2466 (3d ed.).

## STATEMENT OF ISSUES

1. Whether the district court abused its discretion in quashing the OAN Defendants' third-party subpoena for Halderman's deposition, including where (i) Halderman possesses relevant first-hand factual knowledge unattainable from any other individual; (ii) the requested testimony concerns "specific occurrences in dispute" central to a $1.6 billion defamation action implicating core First-Amendment rights; and (iii) the OAN Defendants offered to compensate Halderman, contrary to the court's blanket characterization of the subpoena as seeking uncompensated expert opinion, and making it determinative that there is a substantial need for the information that cannot be obtained from other sources.

**2.**    Whether the district court abused its discretion in denying the OAN Defendants' indicative request for reconsideration, which raised new evidence further demonstrating the unique and relevant nature of Halderman's factual knowledge as it relates to the OAN Defendants' defense of the underlying case.

STATEMENT OF THE CASE

## I.    Factual Background

The underlying action pending in the District of Columbia raises important First Amendment issues, as Dominion seeks over $1.6 billion from each of the OAN Defendants for alleged defamation in media reporting. Quashal Mot. Exh. 1-D, R.1-1, PageID.#304. Dominion's single count of defamation *per se* attacks—among other things—OAN reports that approximately 6,000 votes in Antrim County, Michigan were wrongly counted by the Dominion voting system as being for Biden, rather than for Trump, because of a "glitch" in the Dominion software. *Id.* at PageID.#158; *see id.* at PageID.#115, 130; *see also id.* at PageID.#246-304. The OAN Defendants' position in the underlying case is that the "glitch" occurred when the Dominion tabulators and election management system ("EMS") software silently ingested the wrong election definition files, which caused

5

miscounting the votes in the election night totals. Response Exh. 1-E, R.21-7, PageID.#1618-1620.

Dominion disputes that a defect in its voting machines and software contributed to the vote miscount in Antrim County. *E.g.*, Quashal Mot. Exh. 1-D, R.1-1, PageID.#130. Because Dominion alleges that the OAN Defendants defamed it in part by reporting on the vote miscount and the underlying "glitch," the OAN Defendants' ability to defend against Dominion's charge of falsity (an essential element of Dominion's claim), and also to prove their substantial-truth defense, entitle them to discovery on this topic.[1] That includes whether the vote miscount was caused by a "glitch" or defect in Dominion's voting machines and software, as opposed to human error that had nothing to do with the voting machines and software.

As part of defending against the Dominion suit and protecting their First Amendment rights, the OAN Defendants determined they need factual testimony from third party Halderman. Halderman is an elections and

---

[1] Whereas Dominion has the burden to prove the element of material falsity (an essential element of its claim), the OAN Defendants have the burden on their affirmative defense of substantial truth. An allegedly defamatory statement is "substantially true," and thus not actionable, "so long as the substance, the gist, the sting, of the libelous charge [can] be justified." *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013) (quotation omitted).

cybersecurity expert who, in the immediate aftermath of the Antrim County incident (in early November 2020), observed to several individuals that the vote miscount "should instead be considered a software defect." Response Exh. 1-G, R.21-9, PageID.#1692. Indeed, significantly, Halderman gave a press interview shortly after the vote miscount came to light and blamed the software, stating that "if a simple screw-up could cause these problems, that sounds like a technical design flaw."[2] When Halderman's comments were shared, they provoked an angry email exchange among Dominion's CEO (John Poulos) and its chief security officer (Eric Coomer). *See* Response Exh. 1-G, R.21-9, PageID.#1689.

While Halderman would later (in mid-December 2020) be hand-picked as the State of Michigan's retained expert and investigator of the Antrim County vote miscount, he inserted himself into the public debate over the Antrim County incident much earlier. As referenced, not only did Halderman voluntarily discuss the Antrim County vote miscount with other individuals sharing factual knowledge he learned from Michigan state officials, Response

---

[2] *See, e.g.*, Steven Nelson, *Michigan Republicans Claim Software Issue Undercounted Trump Votes*, N.Y. Post (Nov. 6, 2020), https://nypost.com/2020/11/06/michigan-gop-claims-software-issue-undercounted-trump-votes/.

Exh. 1-G, R.21-9, PageID.#1690-1696; and speak with the press about his observations and thoughts, Response Exh. 1-A, R.21-3, PageID.#1584-1589; Response Exh. 1-B, R.21-4, PageID.#1591-1593; he publicly tweeted about the Antrim County vote miscount, Response Exh. 1-D, R.21-6, PageID.#1610-1611. Five days later, Halderman reached out to Dominion to offer his "help." Response Exh. 1-H, R.21-10, PageID.#1699. The record shows he had additional conversations with Dominion executives specifically about the Antrim County vote miscount, some before and some after being retained. *See* Response Exh. 1-I, R.21-11, PageID.#1701; *see also* Response Exh. 1-H, R.21-10, PageID.#1698.

Through all this, Halderman obtained facts prior to being retained as an expert. Indeed, on November 6, 2020—five weeks before he was retained—Halderman stated: "I talked to our state election director just now and we pieced together more of the puzzle[.]" Response Exh. 1-G, R.21-9, PageID.#1691. On the same day, he also observed that "[i]f incompatible software versions on the tabulators and EMS [electronic management system] can result in badly wrong results, that seems like a serious bug." Response Exh. 1-G, R.21-9, PageID.#1693. Yet the district court below deemed all these

8

experiences and facts learned, even those prior to him being retained, as off limits to discovery.

Halderman was not retained by the Michigan Attorney General until December 14, 2020. Response Exh. 1-O, R.21-17, PageID.#1742-1751. As part of his retained work, Halderman was granted unfettered forensic access to Dominion voting software, the security event logs, forensic images of the hard drive from Antrim County's EMS, the EMS databases with election projects, and forensic images of the 18 compact flash memory cards used by Antrim County in the Dominion voting machines. Response Exh. 1-E, R.21-7, PageID.#1622-1624. Halderman ultimately prepared two different versions of his observations and the information he obtained from investigating the Antrim County incident.

One report, dated March 23, 2021, concluded that "the design of the Dominion software was a contributing factor" to the vote miscount. Indicative Ruling Mot. Exh. 1, R.32-2, PageID.#1961. This statement is directly relevant to the OAN media reports that the Antrim County vote miscount was caused by a Dominion software "glitch." Dominion claims that the OAN Defendants' reporting of this fact was defamatory because the Michigan Department of State (MDOS) stated in a press release it was

"human error." Indicative Ruling Mot. Exh. 4, R.32-5, PageID.#2106. Yet Halderman's post-investigation report dated March 23, 2021 indicates otherwise, and the fact that Halderman continued to hold this belief *after* conducting his investigation is pertinent to the OAN Defendants' proper defense in the underlying case.

A second report came on March 26, 2021—three days after the first one—and undisputedly followed two intervening conference calls with the MDOS and the Michigan Attorney General. In the revised report, Halderman deleted the "contributing factor" observation and made other substantive changes, including downplaying passages describing Dominion's software flaws. Indicative Ruling Mot. Exh. 3, R.32-4, PageID.#2088; Indicative Ruling Mot., R.32, PageID.#1883-1884 (excerpting passages in redline); Indicative Ruling Mot. Exh. 2, R.32-3, PageID.#1968-1969 (conference calls).

As described below, the OAN Defendants cannot obtain from any other source the information that Halderman learned from his direct conversations with election officials and Dominion executives (some before him being retained), and from his work as an investigator. *See, e.g.*, Indicative Ruling Mot., R.32, PageID.#1907-1908. Even Dominion's own top-level executives

had to rely on Halderman's work to fully understand what happened in Antrim County because Halderman alone had access to the relevant voting machine and software data. *See, e.g.*, Indicative Ruling Mot. Exh. 8, R.32-9, PageID.#2118-2120.

## II.    Procedural Background

The OAN Defendants subpoenaed Halderman for a single, compensated deposition in Ann Arbor, Michigan. Quashal Mot. Exh. 1-A, R.1-1, PageID.#60 (subpoena); Response, R.21, PageID.#1553 (offer to compensate). They limited the information sought to the factual knowledge he uniquely possesses: his direct observations of Antrim County's systems, his communications with Dominion and state officials, and the factual basis for revising his reports. *See* Response Exh. 1, R.21-2, PageID.#1578. Halderman initially agreed to appear, but later switched counsel and moved to quash in Michigan federal court. *See id.* at PageID.#1579.

After briefing and a hearing with no live testimony given by Halderman, the district court granted Halderman's motion to quash, determining that the subpoena impermissibly sought "uncompensated expert testimony" in violation of Rule 45(d)(3)(B)(ii). Order, R.28, PageID.#1868. The court found

11

that Halderman's knowledge regarding Dominion's voting systems was acquired through his research and investigations conducted in his expert capacity, not as a first-hand observer of the events in dispute (narrowly defined by the court as "either the system implementation or the voting counting"). Order, R.28, PageID.#1860, 1874. While acknowledging that Rule 45(d)(3)(B)(ii) protects "the opinion and analysis performed by the expert" as distinguished from "the factual record compiled by the expert," the court found that the information sought by OAN Defendants fell solely into the former category. Order, R.28, PageID.#1869; *see id.* at PageID.#1872.

The district court further found that the expected testimony would not describe "specific occurrences in dispute," because Halderman "was not involved in" the Antrim County vote tallying on election day but rather arrived "as the dust was settling as a hired investigator." *Id.* at PageID.#1873-1874. Moreover, the court held, the OAN Defendants had failed to show "a substantial need" for Halderman's testimony "that cannot be otherwise met without undue hardship," Fed. R. Civ. P. 45(d)(3)(C)(i), reasoning they could simply "hire their own expert to evaluate the data." Order, R.28, PageID.#1874. The OAN Defendants initiated the first appeal, No. 25-1110, to challenge the district court's order quashing the subpoena.

The OAN Defendants subsequently learned new information salient to the analysis for quashal. New evidence was produced by state officials showing that Halderman initially attributed the Antrim County vote miscount to Dominion's software as a contributing factor even *after* gaining access to the relevant voting systems and conducting his investigation, but—following two meetings with Michigan state officials—Halderman's later, published report downplayed or entirely *removed* references to Dominion software issues. Indicative Ruling Mot., R.32, PageID.#1882-1883. These are critical facts unattainable from any other source that the OAN Defendants need to properly defend themselves against Dominion's claims.

The OAN Defendants therefore filed a Rule 62.1 motion for indicative ruling, asking that the district court indicate it would grant a Rule 59(e) motion to reconsider based on this new evidence and certain analytical errors in the court's original ruling. *Id.* at PageID.#1886-1887. The district court granted the motion to indicate but instead indicated that it would deny a Rule 59(e) motion to reconsider, finding no basis for such relief. Order, R.42, PageID.#2206. The OAN Defendants initiated the second appeal, No. 25-1531, to challenge this subsequent order as an abuse of discretion on the expanded record. This Court consolidated both appeals given the overlap. Doc.

13

No. 23-1, No. 25-1110 (6th Cir. July 7, 2025); Doc. No. 14-1, No. 25-1531 (6th Cir. July 7, 2025).

## SUMMARY OF THE ARGUMENT

The district court's orders quashing the subpoena for Halderman's deposition and denying reconsideration rest on a series of fundamental errors—factual and legal—that constitute an abuse of discretion and warrant reversal. The OAN Defendants sought Halderman's testimony because he possesses unique, first-hand factual knowledge central to the underlying $1.6 billion defamation litigation brought by Dominion, which raises important First Amendment issues. The district court's rulings improperly shielded this critical evidence from discovery.

The district court clearly erred by disregarding the distinction between Halderman's unique factual knowledge and his expert opinions. Halderman in his role as state investigator was granted direct, forensic access to the Antrim County voting systems, logs, and EMS software used in the 2020 Election. He also communicated with Dominion executives and state officials. He thus learned facts that no other witness can replicate. The district court's focus on Halderman's absence during the election night vote tabulation is misplaced, as the law recognizes that post-event investigation—like a physician

14

examining a patient post-accident—yields critical, non-duplicable factual knowledge. It further ignores the unique factual knowledge Halderman obtained pre-retainment.

The district court also misunderstood the nature of the testimony sought. The OAN Defendants do not seek to conscript Halderman for new, uncompensated expert opinions, but rather to elicit facts about what he personally observed, did, and learned. The court's failure to distinguish between expert opinion and underlying factual knowledge, and its blanket treatment of all of Halderman's knowledge (even that obtained prior to being retained as an expert) as protected, constitutes clear error and an abuse of discretion.

Similarly, the district court ignored the OAN Defendants' offer to compensate Halderman for any deposition time. Rule 45 allows for compelled expert testimony if the witness is reasonably compensated and the information cannot be obtained elsewhere. The court's repeated characterization of the subpoena as seeking "uncompensated expert testimony" is not supported by the evidentiary record and further undermines its ruling.

The district court additionally misapplied the law governing compelled testimony from unretained experts. Rule 45(d)(3)(B)(ii) is conjunctive: it protects only information that both results from the expert's study and does not describe specific occurrences in dispute. The court erred by treating information resulting from Halderman's study as categorically protected, even when it describes the very occurrences at the heart of the litigation, and even when it was learned prior to being retained as an expert. The court wrongly required contemporaneous observation of the disputed event, when the law recognizes that post-event investigation can yield relevant, non-duplicable factual knowledge. For these and other reasons explained below, the district court abused its discretion in quashing the subpoena.

Finally, the district court abused its discretion in denying reconsideration after new, relevant evidence emerged. The MDOS produced a March 23, 2021 report attributing the Antrim County miscount to Dominion's software as a "contributing factor," which was removed after two conference calls with state officials. The court disregarded the factual significance of these substantive changes and improperly weighed the merits of the OAN Defendants' defenses, rather than focusing on the relevance and necessity of Halderman's testimony.

16

**ARGUMENT**

## I.    This Court's review is for abuse of discretion.

Orders quashing subpoenas are reviewed for abuse of discretion. *Lyons v. My Pillow, Inc.*, No. 23-1308, 2023 WL 8450724, at *2 (6th Cir. Dec. 6, 2023) (citing *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 552 (6th Cir. 2015)). The same standard applies to the district court's denial of reconsideration through the OAN Defendants' request for indicative ruling. *Green v. Bank of Am. Corp.*, 530 F. App'x 426, 429 & n.2 (6th Cir. 2013) (applying standard of review applicable to underlying motion where district court acted under Fed. R. Civ. P. 62.1 to deny motion); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (denial of motion to amend judgment under Rule 59(e) is reviewed for abuse of discretion).

"An abuse of discretion occurs when the district court (1) misunderstands the law, (2) relies on clearly erroneous factual findings, or (3) makes a clear error of judgment." *FCA US, LLC v. Wubbolts*, No. 23-1876, 2024 WL 3103755, at *1 (6th Cir. June 24, 2024) (citing *Gales ex rel. Ranson v. Allenbrooke Nursing & Rehab Ctr., LLC*, 91 F.4th 433, 435 (6th Cir. 2024)). A district court misunderstands the law when it applies an incorrect legal standard, *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021)

17

("An error of law is an abuse of discretion" (quotation omitted)), and commits a clear error of judgment when it misapplies the correct legal standard, *Darnell v. Arthur*, 782 F. App'x 413, 416 (6th Cir. 2019) (citing *Jones v. Illinois Cent. R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010)). A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing [court] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Even under abuse of discretion review, errors of law are reviewed *de novo*. *United States v. Grubbs*, 773 F.3d 726, 731 (6th Cir. 2014) (citing *Howe v. City of Akron*, 723 F.3d 651, 658 (6th Cir. 2013)).

## II.    The district court abused its discretion by quashing the subpoena.

Rule 45(d)(3)(B)(ii) provides that a court may quash or modify a subpoena that "requires . . . disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). The rule is designed to protect unretained experts from being

compelled to provide testimony. Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment.

Importantly, however, Rule 45 is not absolute. First, its protections for unretained experts do not apply where the witness, even though an expert by training or profession, is called to testify about facts they personally observed—so-called percipient or fact witness testimony. *See, e.g.*, *Stone v. High Mountain Mining Co., LLC*, No. 19-CV-1246-WJM-STV, 2022 WL 1183724, at \*4 (D. Colo. Apr. 21, 2022). Second, even if the information sought is the product of an expert's study, Rule 45 does not bar compelled testimony if the testimony "describes specific occurrences in dispute," *see* Fed. R. Civ. P. 45(d)(3)(B)(ii), *i.e.*, "those facts that are 'the *substance* of the wrongful act alleged in the lawsuit, not the result of studies related to a fact at issue in the suit,'" *In re Schaefer*, 331 F.R.D. 603, 611 (W.D. Pa. 2019) (quotation omitted). Third, Rule 45(d)(3)(C) further provides that, even if information is otherwise protected, a court may order disclosure if the party seeking the testimony "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship," provided the expert is "reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C)(i)–(ii).

In quashing the OAN Defendants' subpoena to Halderman, the district court abused its discretion in multiple ways, including applying the wrong legal standard, making clearly erroneous determinations about the facts, and ultimately rendering a clear error of judgment in quashing. Each misstep independently led to the ultimate improper decision to quash the subpoena and warrants reversal, and their combined effect—and the decision to quash the OAN Defendants' valid subpoena—certainly compels that relief.

**A.    The district court clearly erred on the facts by disregarding Halderman's unique factual knowledge that was sought through the subpoena.**

*1.    The district court disregarded the facts that Halderman (and only Halderman) knows.*

In quashing the subpoena, the district court clearly erred and otherwise abused its discretion by misconstruing the nature and significance of the *factual* knowledge Halderman uniquely possesses. The court specifically reasoned that Halderman's relevant knowledge was acquired "post hoc," from his own "study and investigation" "for his own research or because of his retention . . . as an expert." Order, R.28, PageID.#1871-1872. Yet the record below plainly demonstrates that Halderman is not merely an expert with generalized opinions, but a percipient witness to a series of fact-based events and communications—some of which pre-date his being retained as an

expert—that are critical to the underlying case and that no other individual can replicate or recount. The district court reversibly erred in failing to recognize and account for these unique facts, described below, that are solely within Halderman's knowledge. The Court should reverse on this ground alone.

First, Halderman had direct, contemporaneous communications with Dominion executives, including Eric Coomer and CEO John Poulos, and those communications are central to the factual matrix of the Antrim County controversy and thus the underlying defamation case. The record shows that Halderman reached out to Dominion in the immediate aftermath of the 2020 Election, offering to "help dispel" what he described as "outrageous conspiracy theories promoted by the president." Response Exh. 1-H, R.21-10, PageID.#1699. These communications occurred before Halderman served as an expert for the Michigan Attorney General and continued into at least December 2020.[3] Response Exh. 1-H, R.21-10, PageID.#1698-1699;

---

[3] At the same time, Halderman was voluntarily putting himself into the public discourse about Antrim County. *See, e.g.*, Steven Nelson, *Michigan Republicans Claim Software Issue Undercounted Trump Votes*, N.Y. POST (Nov. 6, 2020), https://nypost.com/2020/11/06/michigan-gop-claims-software-issue-undercounted-trump-votes/ ("University of Michigan

Response Exh. 1-K, R.21-13, PageID.#1706-1708. Only Halderman can testify to the content, context, and import of these conversations with executives of Dominion—the OAN Defendants' adversary in litigation—at this crucial time period. The district court even acknowledged at oral argument that "two people can have different views of the same conversation." Hrg. Tr., R.24, PageID.#1804.

Further, these communications bear directly on the truth or falsity of the statements at issue in the underlying defamation action and the substantial-truth defense asserted by the OAN Defendants in that action. The

---

computer science professor J. Alex Halderman, a voting machine expert, told the Free Press that 'it's plausibly human error, but if a simple screw-up could cause these problems [in Antrim County], that sounds like a technical design flaw.'"). He made statements to the press, published analyses, and posted contemporaneous tweets (including on November 7, 2020) regarding the cause of the Antrim County incident. For example, Halderman tweeted that the problem "[h]as nothing to do with the version of the Dominion software in use," and he publicly discussed the incident's technical aspects. Response Exh. 1-D, R.21-6, PageID.#1611. Halderman also voluntarily circulated his thoughts and offered his initial observations on the vote miscount, including what he learned from "talk[ing] to the state election director just now and we pieced together more of the puzzle[.]" Response Exh. 1-G, R.21-9, PageID.#1693. These statements were made in his personal capacity, not as a retained expert, and are directly relevant to the OAN Defendants' reporting and the context in which the allegedly defamatory statements were made. As further explained below, the district court's order ignores this critical distinction and the fact that Halderman's personal knowledge of these events is not shielded by his later expert status.

underlying defamation action centers on allegations that the OAN Defendants made false statements about Dominion's voting systems, including claims that Dominion's equipment glitched or flipped votes in Antrim County, Michigan, thereby awarding votes to Biden. Quashal Mot. Exh. 1-D, R.1-1, PageID.#158, 115, 130. Halderman's communications with Dominion could reveal the critical facts that informed his initial assessments, technical findings, and evolving understanding of the incident's root cause.

For example, if Halderman identified facts to Dominion that he saw involving a specific software defect or system vulnerability which contributed to the mis-tabulation, such facts would support the OAN Defendants' argument that their reporting was not materially false or at least was substantially true, or even that there was a legitimate factual basis for their statements that would preclude a finding of actual malice as a matter of law. Or if, as the district court raised at oral argument, Dominion had promised an endowment or other item of value if Halderman would downplay his observations about Dominion's software or other facts he learned that related to Dominion's contribution to the Antrim County vote miscount, that would also be highly relevant to the OAN Defendants' defense against Dominion's claims. Hrg. Tr., R.24, PageID.#1803-1804.

Second, Halderman was granted direct, forensic access to the Antrim County voting machines, EMS data, and machine logs following the 2020 Election. Response Exh. 1-E, R.21-7, PageID.#1622-1624. The OAN Defendants did not have this access. Halderman's factual knowledge gained and observations made—what he saw, what he did, what he found—are not expert opinions in the abstract, but firsthand, factual knowledge about the state of the machines, the data, and the software as they existed in the aftermath of the 2020 Election.

No other witness can provide this testimony, either. Halderman personally observed facts and learned information through his uniquely granted access to the machines and software used by Antrim County, and through his conversations with Michigan election officials starting as early as November 6, 2020 (prior to him being retained) and with Dominion executives. Response Exh. 1-G, R.21-9, PageID.#1691-1692; Response Exh. 1-E, R.21-7 at PageID.#1622-1624. And this testimony is central to the underlying defamation litigation because Dominion is suing the OAN Defendants over certain reporting that cited Dominion software "glitches," as opposed to solely human error, that caused the Antrim County vote miscount.

24

Despite all this, the district court suggested that Halderman's absence during system implementation and on election day disqualifies him as a fact witness. *See* Order, R.28, PageID.#1874. But that is legally and logically flawed.

Most obviously, this rationale contravenes the analogous, accepted situation where a physician, who is by trade an expert, examines and treats a patient for injuries after an accident that results in litigation. As reflected in cases that Halderman relied on in his motion to quash, that doctor is a *fact* witness to the patient's condition and other facts observed, even though the doctor did not witness the accident itself. *Doering v. Koppelberger*, No. 343196, 2019 WL 4732725, at *3 (Mich. Ct. App. Sept. 26, 2019) ("Based on first-hand knowledge obtained from her examination of plaintiff, Dr. Kneiser could describe plaintiff's physical condition and the expert opinions she derived therefrom."); *Kissel v. Nelson Packing Co.*, 87 Mich. App. 1, 4 (1978) (holding that the physician who conducted a medical examination in a premises liability case "became a witness to the nature and extent of [the plaintiff's] injuries"). The doctor's firsthand observations, examination findings, and treatment are all subject to discovery and deposition, regardless of when or how the doctor became involved.

25

Similarly here, Halderman directly examined the Antrim County voting systems, logs, software, and other data—in the immediate aftermath of the election—and that renders him a fact witness to the condition and functioning of those systems at the relevant time. By analogy, Halderman is the physician and the voting system is the patient. The same rationale applies to his immediate communications with Dominion executives and what he learned from them. His observations are factual, and his findings are based on factual in nature, not merely expert opinion. The fact that he was not present during the actual vote tabulation from election night is of no consequence; what matters is that he is the only person who can testify to what he observed and found when he examined the systems, what he discussed with Michigan election officials and Dominion executives, why he changed his observations in his reports, and what he learned from his unique access.

The district court's rationale, discounting Halderman's factual knowledge entirely based on his not being present on election day, constitutes reversible error. It effectively immunizes from discovery the only individual with firsthand knowledge of some of the most critical facts in dispute, simply because he was not present at the moment of the incident. This is contrary to law and the interests of justice.

26

In sum, the district court's order quashing the subpoena disregards the unique, irreplaceable factual knowledge possessed by Halderman—knowledge that is not protected simply because he is also an expert. These clear errors and abuses of discretion necessarily resulted in the improper decision to quash the subpoena and warrant reversal. The OAN Defendants are entitled to depose Halderman regarding his personal knowledge, communications, and direct observations, all of which are relevant to the truth or falsity of the statements at issue and the defenses asserted in the underlying litigation.

### 2. *The OAN Defendants aim to elicit factual information from Halderman, not opinion testimony.*

Relatedly, the district court's orders misapprehend the nature and purpose of the OAN Defendants' subpoena to Halderman. The district court held that the subpoena's object was to force Halderman "to repeat under oath an opinion that a number of votes in Antrim County were 'flipped' because of a software defect, that the incorrect vote tally there was not due to human error, and that the Dominion systems in use in Georgia had security flaws." Order, R.28, PageID.#1874. But the OAN Defendants do not seek to conscript Halderman as an involuntary expert. Rather, the subpoena is narrowly tailored

27

to obtain *factual* information within Halderman's personal knowledge—information that, as explained above in Part II.A.1, cannot be obtained from any other source and is important to the truth or falsity of the statements at issue in the defamation action. The district court's disregard for the distinction between expert opinion and underlying factual knowledge, and its incorrect characterization of the OAN Defendants' objectives, constitute clear error and an abuse of discretion warranting reversal.

There is a fundamental and legally significant distinction between an expert's opinions and the facts upon which those opinions are based. Rule 45(d)(3)(B)(ii) protects unretained experts from being compelled to provide opinion testimony, but not from testifying to *facts* they have personally observed or learned through direct investigation—especially where those facts are unavailable from any other source. *See, e.g.*, *Klabunde v. Stanley*, 384 Mich. 276, 280, 282 (1970).

The record below unequivocally demonstrates that Halderman's unique access, described above, enabled him to gain firsthand knowledge and factual observations, similar to the medical examination of a patient. For example, Halderman personally observed and documented:

28

- The contents and state of the machine log data and EMS records from the 2020 Election in Antrim County (Response Exh. 1-E, R.21-7, PageID.#1622-1624);

- The fact that Dominion tabulators and EMS software silently ingested wrong election definition files, which has direct bearing on the sequence of events leading to the vote miscount (*id.* at PageID.#1631-1633);

- The fact that two different township clerks zeroed out memory cards at nearly the exact same time—a factual occurrence involving the electronic vote records (*id.* at PageID.#1634-1635);

- The purging of Dominion security logs, including logs from election day and before (*id.* at PageID.#1659); and

- Certain vulnerabilities Halderman observed in the Dominion system during his direct forensic examination (Response Exh. 1-C, R.21-5, PageID.#1598).

These are not abstract, expert opinions or hypothetical scenarios; they are factual points based on Halderman's unique, firsthand access to the relevant systems and data, and his observations that occurred during this access. And they bear directly on a central issue in the defamation action:

29

whether the errors in Antrim County were caused by a "glitch" or defect in Dominion's software (as OAN Defendants contend), versus human error (as Dominion alleges). The OAN Defendants seek to question Halderman about *facts* such as what he saw, observed, did, and learned—not to elicit his opinions about causation or to have him draw new conclusions. Response Exh. 1, R.21-2, PageID.#1578. The distinction is critical: while an expert's opinion about whether a vulnerability caused a particular outcome may be protected, the facts about what vulnerabilities existed, what the logs showed, and what actions were taken by election officials are not.

Yet the district court's orders collapse this distinction, erroneously treating *all* of Halderman's knowledge and factual observations as protected expert opinions simply because he possesses expertise and was retained later as an expert in other matters. *See* Order, R.28, PageID.#1872 ("Anything Dr. Halderman knows about the Dominion voting systems comes from his study and investigation, which he conducted for his own research or because of his retention in other matters as an expert with superior scientific and technical skill."). This is contrary not only to the record, but to the law and to the practical realities of fact discovery. As the Second Circuit has observed, it is wrong to

30

assume[] that the only purpose in calling an expert is to ask him to express an opinion about facts of which he has no personal knowledge . . . [because o]ften the inquiry may be about the development of techniques, the stage they had reached, [and] opinions already formulated or expressed . . . . To clothe all such expert testimony with privilege solely on the basis that the expert 'owns' his knowledge free of any testimonial easement would be to seal off too much evidence important to the just determination of disputes.

*Kaufman v. Edelstein*, 539 F.2d 811, 820–21 (2d Cir. 1976).

Although the OAN Defendants should not be required to preview their deposition strategy, the record below provides concrete examples of the types of factual questions they seek to pose to Halderman. *See* Indicative Ruling Mot., R.32, PageID.#1902-1904. These questions go to the heart of the factual disputes in the underlying case and are ones only Halderman can answer:

- What did Halderman personally observe in the Antrim County EMS and machine logs regarding the sequence of events on election night and before? How did he obtain this factual information if the security event logs were purged? What facts did he observe that led him to determine that was a coincidence?

31

- What facts did he observe that led to his determination that the timing of two clerks re-zeroing out memory cards at the same time was not intentional?

- What facts did he observe from the August 2020 election project database? Did he see any evidence of vote miscounts?

- What communications did Halderman have with Dominion executives (such as Coomer and Poulos) and with Michigan state officials, both before and after he was retained as an expert? What was discussed, and what factual information did he learn from those conversations?

- What, if any, factual information did Halderman learn about similar issues in other Michigan counties (such as Isabella County) or about prior experiences with Dominion software renumbering candidate IDs and causing vote miscounts?

These non-exhaustive exemplar questions do not seek to elicit expert opinions, but are targeted, factual inquiries into information uniquely within Halderman's knowledge. And again, they are important to the OAN Defendants' ability to defend themselves in a $1.6 billion defamation action that implicates core free speech protections guaranteed by the First

Amendment. For example, they bear on the OAN Defendants' ability to negate Dominion's essential element of material falsity, including whether the errors were caused by a "glitch" or defect in Dominion's software as opposed to solely human error. Quashal Mot. Exh. 1-D, R.1-1, PageID.#158; *see id.* at PageID.#115, 130 (additional complained-of statements relating to Antrim County incident).

For these reasons, the district court's orders are mistaken—and misread both the subpoena and the OAN Defendants' briefing below—to characterize the OAN Defendants as seeking to compel Halderman to "repeat under oath an opinion that a number of votes in Antrim County were 'flipped' because of a software defect." Order, R.28, PageID.#1874; *see also* Order R.42, PageID.#2202. The OAN Defendants have consistently stated they seek to depose Halderman about factual matters, not to elicit expert opinions. Response Exh. 1, R.21-2, PageID.#1578; Response, R.21, PageID.#1563, 1570. The district court's flawed reading of the OAN Defendants' subpoena and briefing, and its characterization of all of Halderman's knowledge as protected opinion testimony, are clearly erroneous and an abuse of discretion. *See* Order, R.28, PageID.#1872 ("Dr. Halderman has no 'personal knowledge' of any information sought by the defendants.").

Relatedly, the district court's approach in this regard misapplied the governing legal standards in a significant way. Rule 45(d)(3)(B)(ii) does not create a blanket privilege for all information known by an expert; it protects only "opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." But here, the OAN Defendants seek to question Halderman about "specific occurrences in dispute"—namely, the facts surrounding the Antrim County vote miscount, the state of the voting systems and logs, and the communications and events that led to the public narrative about the cause of the incident. This is a categorical exception in Rule 45 that independently supports reversal. *See also infra* Part II.D.3. The factual record compiled by Halderman is not shielded simply because he also possesses expertise and was later retained. The district court's ruling is thus legally erroneous and an abuse of discretion.

In sum, the district court's refusal to allow any inquiry into these matters—despite the OAN Defendants' offers to limit questioning to factual topics (as explained above) and to compensate Halderman for his time (*see infra* Part II.B)—effectively immunizes the only percipient witness to these critical events from discovery. This is not what Rule 45 contemplates, and it

is not what the interests of justice require. *See Kaufman*, 539 F.2d at 821. The district court's orders commit clear error, misapply the law, and constitute abuses of discretion, justifying reversal.

### B. The district court clearly erred on the facts by ignoring the OAN Defendants' offer to compensate Halderman.

Another basis for reversal is the district court's repeated characterization of the OAN Defendants' subpoena as an attempt to "conscript" Halderman as an "uncompensated" expert, which is factually inaccurate. *See* Order, R.28, PageID.#1868, 1874-1875; *see also* Order, R.42, PageID.#2200 (same); Order, R.28, PageID.#1859 ("without pay"). The OAN Defendants made clear they were willing to compensate Halderman at his standard and reasonable hourly rate for his time. Yet the district court failed to acknowledge this offer, and in fact repeatedly rested its decision to quash on the mistaken assumption that the deposition would be *un*compensated. This undermines the court's rationale for quashing the subpoena and constitutes clear error, an abuse of discretion, and reversible error.

From the outset, the OAN Defendants have not sought to obtain Halderman's testimony as a gratuity or to exploit his expertise without fair

compensation. In their response to Halderman's motion to quash, the OAN Defendants expressly stated their willingness "to pay his *standard and reasonable* hourly rate for the deposition time spent answering OAN's questions provided Dominion does not contend that Halderman is OAN's expert or is attempting to influence his testimony." Response, R.21, PageID.#1553. This offer was not a belated litigation tactic, but a direct response to the evolving circumstances of the discovery process.

Indeed, the record reflects that Halderman, through his original counsel, had agreed to appear for a deposition and that the parties had reached agreement on the date and location. Quashal Mot. Exh. 1-C, R.1-1, PageID.#76-77. Only after Halderman changed counsel did he abruptly reverse course and move to quash the subpoena. The OAN Defendants promptly offered to compensate Halderman in their briefing (Response, R.21, PageID.#1553), as soon as it became apparent compensation was being raised as an issue (Quashal Mot., R.1, PageID.#44). There is no suggestion in the record that the OAN Defendants ever refused to provide compensation.

Accordingly, there is no valid basis for the district court's orders characterizing the subpoena as seeking "uncompensated" expert testimony. Order, R.28, PageID.#1874-1875; *see id.* at PageID.#1859 (stating that

Halderman was being asked to testify "involuntarily and without pay"), PageID.#1868 (describing Halderman's status as an "uncompensated expert" as his "most compelling argument" for quashal); *see also* Order, R.42, PageID.#2200.

This fundamental error undermines the basis for the district court's ruling. Rule 45(d)(3)(C)(ii) expressly contemplates that, where a party demonstrates a substantial need for expert testimony that cannot otherwise be met without undue hardship, the court may order the appearance or production "upon specified conditions," including "ensur[ing] that the subpoenaed person will be reasonably compensated." The OAN Defendants' expressed willingness to compensate Halderman with a reasonable fee for his time removes any legitimate concern about conscripting an expert's labor without pay and brings this case squarely within the rule's framework for balancing the interests of the parties and the witness. The district court's failure to engage with this key fact, and its repeated references to Halderman as "uncompensated," are not only inaccurate but reflect an error on and failure to consider a central, outcome-determinative point under Rule 45 and the governing case law. This constitutes clear error and a textbook example of an abuse of discretion. The Court should reverse based on the failure to consider

37

the OAN Defendants' willingness and offers to compensate Halderman, especially given their substantial need for his testimony (*see supra* Part II.A) that cannot be otherwise met without undue hardship given the irreplaceable nature of Halderman's personal knowledge (*see infra* Part II.C.2).

**C.    The district court abused its discretion by misapplying the law to the facts.**

The district court's decision to quash the OAN Defendants' subpoena also requires reversal because it misapplies the law to the facts of this case. Unlike the typical "unwilling expert" scenario, Halderman is not merely an academic or theorist with generalized expertise; he is a direct, first-hand observer of the events and data at the heart of the underlying litigation. The district court's failure to recognize and account for this distinction, and its ultimate decision to quash despite these facts, constitutes an abuse of discretion requiring reversal.

***1.    Unlike other "unwilling expert" cases, Halderman has first-hand knowledge of disputed factual matters.***

The district court premised its ruling on the notion that Halderman's knowledge is the product of only his expert study, not first-hand observation of facts giving rise to liability. Order, R.28, PageID.#1860. But that faulty

premise not only constitutes clear error as explained above (*see supra* Part II.A), it misapplies governing law.

In cases such as *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.* (relied upon by the district court), courts quash a subpoena directed at a researcher whose only connection to the dispute was his independent study of the product at issue, not any direct involvement in the events giving rise to the litigation. *See, e.g.*, No. 05-36, 2007 WL 1051759, at *3 (D. Utah Apr. 2, 2007). In that distinct context, it makes sense to emphasize that the researcher "was not a participant in the industry; although his testimony might help the defendant, the non-party was not an 'observer of facts giving rise to liability.'" Order, R.28, PageID.#1873 (quoting *Glaxosmithkline*, 2007 WL 1051759, at *3).

Here, by contrast, Halderman is a percipient witness. *See supra* Parts II.A.1–2. For this reason, the district court's assertion that Halderman is not a "first-hand observer" (Order, R.28, PageID.#1860) is contrary to both the record and analogous precedent. In *Doering v. Koppelberger*, the Michigan Court of Appeals recognized that a physician (a medical expert) who examined a patient after an injury—albeit not present at the time of injury—could testify as a fact witness regarding the patient's condition, observations made during

39

the examination, and the data points learned solely through expert evaluation. No. 343196, 2019 WL 4732725, at *3 (Mich. Ct. App. Sept. 26, 2019). Such testimony was not shielded merely because the physician was also an expert; rather, that court held, the physician's first-hand observations were discoverable and relevant. *Id.*

The analogy is apt: here, the "patient" is the Antrim County voting system, and Halderman is the only "treating physician" who examined it in the aftermath of the disputed incident. His direct access to the machines, logs, and software allowed him to observe and record facts unavailable to any other witness. *See supra* Part II.A.1. The OAN Defendants seek to depose him about these factual observations, not about hypothetical opinions or after-the-fact expert analysis. *See supra* Part II.A.2. The district court's refusal to honor this distinction is a clear misapplication of law and abuse of discretion.

The district court also erred by focusing solely on Halderman's service as the Michigan Attorney General's retained expert, disregarding that his involvement in the events at issue began well before then. *See supra* Part II.A.1. These communications were not the product of expert retention, research study, or litigation strategy, but rather contemporaneous, first-hand observations and actions of a direct participant in the unfolding events.

40

Indeed, Halderman voluntarily injected himself into the events surrounding Antrim County. Contrary to the district court's premise in quashing the subpoena, the OAN Defendants seek to question Halderman about his pre-retention observations, statements, and communications he uniquely obtained, which are plainly factual in nature and highly relevant to the truth or falsity of the statements at issue in the underlying defamation action. *See supra* Part II.A.1. The district court's blanket application and overextension of the "unwilling expert" doctrine ignores this critical factual context and improperly shields from discovery information that is uniquely within Halderman's personal knowledge.

The district court's approach effectively creates a bright-line rule: once an individual is retained as an expert, all facts learned—before or after retention—are categorically shielded from discovery by adverse parties. This is not, and cannot be, the law. Rule 45 and the relevant case law recognize that experts may be compelled to testify about facts they personally observed, especially where those facts are uniquely within their knowledge and essential to the fair determination of the dispute. As the Second Circuit explained in *Kaufman v. Edelstein*, "[w]e can find no justification for a federal rule that would wholly exempt experts from placing before a tribunal factual knowledge

41

relating to the case in hand, opinions already formulated, or, even, in the rare case where a party may seek this and the witness feels able to answer, a freshly formed opinion, simply because they have become expert in a particular calling." 539 F.2d 811, 821 (2d Cir. 1976).

The district court therefore misapplied the law, clearly erred, and abused its discretion in deciding to quash the subpoena based solely on Halderman's status as an expert, without regard to the nature or timing of the facts sought. This approach improperly immunizes from discovery any and all factual information in the possession of an expert, regardless of how or when it was acquired or its centrality to the dispute. Such a rule would "seal off too much evidence important to the just determination of disputes" and is contrary to both the letter and spirit of the Federal Rules. *See Kaufman*, 539 F.2d at 821.

## 2. *Halderman's unique personal knowledge of facts cannot be duplicated elsewhere.*

Equally flawed is the district court's conclusion that the OAN Defendants could simply hire another expert to obtain the same information it seeks from Halderman. In fact, the evidence conclusively shows that Halderman's personal, first-hand access to the Antrim County voting

42

systems, his direct communications with key actors, and his unique role in authoring the authoritative reports on the incident render his factual knowledge irreplaceable. *See generally supra* Part II.A.1. The district court's contrary finding is clear error, a misapplication of law to these facts, and an abuse of discretion.

As explained above, Halderman was granted unique access to the voting systems and learned facts from conversations with Michigan election officials and Dominion executives. *See supra* Part II.A.1. The facts gained through these experiences are not theoretical or secondhand; they are the product of Halderman's personal involvement and direct observation as a percipient witness. No other individual—expert or otherwise—had all these experiences and learned what facts they taught, and certainly no one possesses this *combination* of access, communications, experience, and contemporaneous factual knowledge. Accordingly, the district court's suggestion that the OAN Defendants could simply "hire their own expert to evaluate the data available" is factually and legally erroneous. *See* Order, R.28, PageID.#1874.

For example, as the OAN Defendants explained to the district court, *no* other expert—including those retained by the OAN Defendants—was granted the same level of access to the Antrim County voting systems, EMS data, or

43

machine logs as Halderman. Indicative Ruling Mot., R.32, PageID.#1907.

Halderman himself documented in his reports that he accessed the Antrim

County EMS "without Antrim County providing any passwords," which was

a level of access not afforded to any other party, including the *Bailey* plaintiffs'

experts. Response Exh. 1-E, R.21-7, PageID.#1624.[4] The *Bailey* team, at most,

was permitted to take "forensic images," but there is no evidence they had the

same real-time, unrestricted access to the live system, nor did they engage in

the same direct communications with Dominion and state officials.[5]

Furthermore, Halderman's unique access allowed him to observe and evaluate

the specific configuration, software versions, and operational environment

present in Antrim County at the time of the incident (Response Exh. 1-E, R.21-

---

[4] The *Bailey* plaintiffs brought suit in Michigan state court—*William Bailey v. Antrim County*, No. 2020-009238-CZ (Mich. Cir. Ct.—Antrim Cty.)—challenging the results of the 2020 Election in Antrim County, Michigan. Halderman was retained by the Michigan Attorney General in connection with this action and other matters. Response Exh. 1-O, R.21-17, PageID.#1742.

[5] *See* Decision and Order Regarding Plaintiff's Motion for an Ex Parte Temporary Restraining Order, Show Cause Order and Preliminary Injunctions, *William Bailey v. Antrim County*, Case No. 2020-9238-CZ (Mich. Cir. Ct.— Antrim Cty. Dec. 4, 2020).

44

7, PageID.#1622-1624)—facts that cannot be reconstructed after-the-fact or by reviewing static images.

Nor was the district court correct, factually or legally, to assert that "software is not like a crime scene where access at particular time points matters a great deal." *See* Order, R.42, PageID.#2205. The OAN Defendants' expert, like any other, would be limited to reviewing whatever data is made available through discovery, without the benefit of the contemporaneous, hands-on evaluation and direct communications that informed Halderman's findings and knowledge base. The unique circumstances of the Antrim County incident, including the specific system state, logs, and communications, cannot be recreated or retroactively accessed by a new expert as the district court suggested. The court's statement is both factually incorrect and legally irrelevant.

Likewise, the district court's reliance on the existence of "a substantial number of practitioners in this area" (Order, R.42, PageID.#2205), as a basis to quash the subpoena, misunderstands the nature of the factual knowledge at issue. The question is not whether other experts are qualified in the field of election security, but whether anyone else has the same level of first-hand,

45

contemporaneous, and privileged access to the Antrim County facts as Halderman. And the answer is unequivocally no.

In sum, the law does not require a party to accept a substitute or secondhand account when the original, irreplaceable witness is available and possesses information essential to the fair determination of the dispute. As the Second Circuit recognized in *Kaufman v. Edelstein*, the "task of determining whether the country contains a voluntary expert who is really as qualified and useful as the witness sought to be compelled would be an almost impossible one." 539 F.2d at 821. Here, the record is clear: no other expert, regardless of credentials, can provide the same factual testimony as Halderman. The district court clearly erred, misapplied the law, and abused its discretion in quashing the subpoena.

> ### 3. *The district court improperly pre-judged the merits in determining that the benefits of Halderman's testimony fail to outweigh the burden of a deposition.*

The district court's Rule 45 undue-burden analysis was legally flawed, and otherwise an abuse of discretion, for yet another reason: it improperly pre-judged the merits of the underlying action and discounted the critical relevance and probative value of Halderman's testimony. Rather than neutrally weighing the need for the testimony against any articulated burden,

the court repeatedly characterized the defamation dispute in a manner that presumed the truth of Dominion's allegations, accepted Halderman's self-serving statements without permitting adversarial testing, and dismissed the unique factual issues at the heart of the OAN Defendants' substantial-truth and damages defenses.[6] This approach contravened the governing legal standards, defied the record, and deprived the OAN Defendants of a fair opportunity to obtain essential evidence.

First, the district court's framing ignores the actual evidence. The OAN Defendants are being sued for broadcasting that the Antrim County vote miscount was due to a Dominion software glitch, not solely human error.[7] But as they have explained, the factual basis for this reporting was not invented or

---

[6] As just one example, in its introduction, the court stated: "In the aftermath of the 2020 presidential election, certain news outlets made demonstrably false statements about the integrity of certain voting equipment systems and their accuracy of tallying votes correctly." Order, R.28, PageID.#1859. This language presumes the falsity of the statements at issue, rather than treating the truth or falsity as a disputed fact to be resolved in the litigation.

[7] *See, e.g.*, Quashal Mot. Exh. 1-D, R.1-1 PageID.#130, and at-issue statement made by OAN reporter Chanel Rion on November 21, 2020: "But Dominion captured headlines when it was discovered it had glitched 6,000 votes giving Biden a fraudulent win. This was not an isolated event." Response, R.21, PageID.#1558.

manufactured by OAN; it was supported by Halderman's own initial findings. Indeed, Halderman's concluded in the immediate aftermath of the Antrim County incident that the errors were due to a "software defect." Response Exh. 1-G, R.21-9, PageID.#1692.

As was explained in the district court, in defamation cases, negating falsity or establishing substantial truth can be proven from evidence subsequent to the at-issue reporting. Hrg. Tr., R.24, PageID.#1787. Here, similar to what the OAN Defendants reported (and were subsequently sued for by Dominion)—that Antrim County's vote miscount was a result of a Dominion software "glitch"—Halderman's March 23, 2021 post-investigation report observed that "the design of Dominion's software was a contributing factor" to the Antrim County vote miscount. *See* Indicative Ruling Mot., R.32, PageID.#1883-1884 (excerpting March 23 report). The OAN Defendants are entitled to depose Halderman about the facts underlying this observation, as well as the circumstances and reasons for the subsequent changes to his opinion. But in no event should the district court have simply presumed the truth of Dominion's allegations in the underlying lawsuit.

Second, the district court similarly erred by taking at face value the self-serving statements in Halderman's declaration and those of his counsel,

48

without giving the OAN Defendants an opportunity to challenge those assertions by deposition.[8] For example, the court cited Halderman's statement that "his research uncovered no evidence that any of the vulnerabilities he located actually were exploited to affect any elections" (Order, R.28, PageID.#1864) as if it were an established fact (*id.* at PageID.#1874), rather than what it really was: a contested assertion, which is also irrelevant to the truth or falsity of what OAN actually reported concerning the Antrim County "glitch."

By presuming the truth of Halderman's declaration as the reason to preclude the OAN Defendants from being able to question Halderman, the district court's approach is contrary to the adversarial process and the purpose

---

[8] Notably, and as an illustration of the risk of taking Halderman's declaration at face value, Halderman's sworn live testimony in another lawsuit revealed that his resistance to the OAN Defendants' subpoena was motivated by personal and subjective reasons—such as his wife's disapproval and a general unwillingness to testify for OAN—rather than by (as he contended in his declaration) confidentiality obligations. This seeming contradiction undermines the credibility of his stated reasons in the declaration and highlights the need for adversarial testing of his claims. *Compare* Trial Tr., ECF No. 398 at 166:8, *Coomer v. Lindell*, No. 22-cv-01129 (D. Colo. June 12, 2025) (Halderman testifying "my wife won't let me testify for [OAN]"), *with* Quashal Mot. Exh. 2, R.1-2, PageID.#405 (suggesting court-ordered confidentiality requirements prohibit Halderman's compliance with OAN Defendants' subpoena).

of discovery. The OAN Defendants are entitled to probe the basis for Halderman's statements, test his recollection, explore the scope of his investigation, and determine whether his conclusions were influenced by external factors or incomplete information. But the court instead credited Halderman's declaration without permitting any cross-examination or adversarial inquiry, effectively insulating a key witness from scrutiny and depriving the OAN Defendants of a fair opportunity to develop their defenses.

Third, the district court also erred in disregarding issues that are highly relevant to the OAN Defendants' defenses in the defamation case. For instance, the court dismissed the relevance of Halderman's private correspondence with Dominion executives before he was retained as an expert for the State of Michigan. Order, R.28, PageID.#1870. The court concluded that these communications were not relevant, reasoning that they were not relied upon in OAN's reporting. *Id.* Yet that plainly misapplies the law governing material falsity, substantial truth, and damages in defamation cases.

As to Dominion's burden to show material falsity and the OAN Defendants' substantial-truth defense, the bases for Halderman's contemporaneous statements—whether they attribute the Antrim County

incident to Dominion software error or only human error—are directly relevant. If Halderman, as the only individual with direct access to the systems and data, initially believed and communicated that a software defect was responsible, this fact negates material falsity and supports the reasonableness and truthfulness of OAN's reporting. Moreover, while the court suggested that Halderman's statements in the aftermath of Antrim County are of little relevance (Order, R.28, PageID.#1870), that ignores the reality that Dominion's complaint repeatedly references the Antrim County incident as a key example of the alleged defamation.[9] The OAN Defendants' ability to negate falsity or establish the substantial truth of even one such statement is material to their defense and may affect the outcome of the case.

As to the OAN Defendants' damages positions, whether Halderman shared his contemporaneous sentiments with others, including election

---

[9] Dominion's complaint alleges, for instance, that Defendants promoted a "'report' on the election results in Antrim County . . . falsely claiming that Dominion machines were designed to and did switch votes from Trump to Biden." Quashal Mot. Exh. 1-D, R.1-1 PageID.#115. Dominion does not dispute that an error in the original, unofficial Antrim County vote count did in fact occur, but Dominion asserts that the error "was not due to the Dominion machines," *id.* at PageID.#130, and further asserts that alleged reporting by Defendants "lied about Dominion" by claiming a "glitch" happened and that Biden was given "'a fraudulent win' in Antrim County," *id.* at PageID.#158.

officials or policymakers, could bear on the issue of damages. Specifically, if Dominion suffered any adverse business consequences attributable to *Halderman's* statements or findings, rather than OAN's broadcasts, this would be highly relevant to the calculation of damages and the allocation of responsibility. Yet the district court's decision to quash categorically excludes this line of inquiry, improperly narrowing the scope of relevant discovery and shielding critical factual information from adversarial testing. For all these reasons, the district court abused its discretion in applying the Rule 45 undue-burden standard.

### D.    The district court applied the wrong legal standard.

In several respects (some of which are also addressed above), the district court's order quashing the OAN Defendants' subpoena applied the wrong legal standard. These constitute additional reasons the court abused its discretion, justifying reversal.

#### 1.    *A fact witness does not have to contemporaneously witness the occurrence in dispute.*

As explained above (*supra* Part I.A.1), the district court wrongly presupposed that only those who directly observed the central event—here, the vote tabulation on election day in Antrim County—could possess relevant factual knowledge. *See, e.g.*, Order, R.28, PageID.#1874. This is not the law.

Courts have long recognized that a witness may possess highly relevant factual knowledge even if their observations or investigations occurred before or after the event, rather than during it. *See, e.g.*, *Doering v. Koppelberger*, No. 343196, 2019 WL 4732725, at *3 (Mich. Ct. App. Sept. 26, 2019). The key inquiry is whether the witness has unique, personal knowledge of facts relevant to issues in dispute—not whether they were present when the underlying event occurred.

Here, Halderman was granted unique access and learned facts from his conversations with Michigan election officials and Dominion executives. *See supra* Parts I.A.1 & I.C.1. Halderman's level of access and his factual knowledge obtained are (contrary to his self-serving and untested declaration) and not replicable by any other expert, including those retained by OAN, who did not have the same access or opportunity to observe the same facts. *See supra* Part I.C.2. The district court's focus on contemporaneous observation ignores that post-event investigation can yield critical, non-duplicable factual knowledge, and thus it applied an unduly restrictive and incorrect legal standard for determining who qualifies as a "percipient" or fact witness under Rule 45.

53

### 2. *A jury, not the district court, is entitled to weigh the merits of the substantial-truth defense.*

The district court further legally erred by minimizing the relevance of Halderman's factual knowledge to the OAN Defendants' ability to negate falsity or establish its substantial-truth defense, which is an absolute bar to defamation liability. *See supra* Part I.C.3. In doing so, the court applied the wrong legal test on substantial truth, contravening well-settled law that a statement is not actionable as defamation if its "gist" or "sting" is substantially true, even if some details are inaccurate. *See Newman v. Howard Univ. Sch. of Law*, 715 F. Supp. 3d 86, 112 (D.D.C. 2024).

Here, OAN's reporting that Dominion's software contributed to the Antrim County vote miscount is directly supported by Halderman's own observation early on in November 2020 that the errors were due to a "software defect." Response Exh. 1-G, R.21-9, PageID.#1692. In addition, and directly relevant to the underlying defamation litigation, Halderman maintained that observation *after* he conducted his investigation into Antrim County—as late as March 23, 2021, expressly stating that "the design of the Dominion software was a contributing factor." *See* Indicative Ruling Mot. Exh. 1, R.32-2, PageID.#1961. This is not a trivial or collateral point: it goes

54

to the heart of whether OAN's statements were false or, in fact, substantially true or, instead, were so inherently improbable as to be actionable. And why Halderman changed his report to remove these observations, including whether it was due to pressure from Michigan state officials or otherwise, is highly relevant.

The district court's failure to recognize the central importance of this evidence to the OAN Defendants' defenses in the underlying case reflects a misapplication of defamation law. The court's approach effectively insulated Halderman from compelled testimony, including factual evidence that directly supports one of the OAN Defendants' core defenses.

### 3. *The district court erroneously construed the exception in Rule 45(c)(3)(B)(ii).*

Finally, the district court misapplied Federal Rule of Civil Procedure 45(d)(3)(B)(ii) by treating the fact that information "results from the expert's study that was not requested by a party" as alone a sufficient condition for quashing the subpoena. This constitutes legal error and a plain misapplication of the law to these facts, thereby abusing the court's discretion.

Specifically, the district court held that "even if the [OAN] [D]efendant[s] could establish that the subject of their deposition inquiry will

focus on the 'specific occurrences in dispute' in their case, the information they seek plainly 'results from the expert's study that was not requested by a party.'" Order, R.28, PageID.#1874 (quoting Fed. R. Civ. P. 45(d)(3)(B)). Yet Rule 45(d)(3)(B)(ii), by its plain text, is conjunctive: it authorizes quashal only if the subpoena requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute _and_ results from the expert's study that was not requested by a party" (emphasis added). Thus, having information at issue that "results from the expert's study" is a basis for quashing a subpoena only where the information *also* "does not describe specific occurrences in dispute." The district court therefore erred in its analysis, purporting to apply the "results from the expert's study" exception as an independent basis even where the information *does* describe "specific occurrences in dispute." That is clearly erroneous and flatly inconsistent with the rule's text.

This error is critical. As explained above, the OAN Defendants easily satisfied the "specific occurrences in dispute" prong in this case. *See supra* Part II.A.2. Halderman's unique factual observations—what he saw, did, and learned during his forensic investigation of the Antrim County voting systems—are not abstract opinions, but direct evidence describing the specific

occurrences at the heart of the underlying litigation. The district court's rejection of this "specific occurrences in dispute" contention (*see* Order, R.28, PageID.#1873-1874) wrongly collapsed the distinction between unique factual knowledge and generalized expertise, in a manner inconsistent with both the text and purpose of Rule 45. *See supra* Part II.A.2. And the court's attempt to sidestep this with a supposed alternative argument—that it can quash the subpoena even if the information did relate to "specific occurrences in dispute"—misinterpreted the rule's text, misapplied the governing legal standard, and is a clear abuse of discretion. This Court should reverse on this basis as well.

* * *

The district court's order quashing the subpoena cannot stand. It failed to distinguish between Halderman's unique, first-hand factual knowledge and his expert opinions, or to recognize the overwhelming importance of Halderman's personal factual knowledge to the OAN Defendants' defenses in a billion-dollar defamation case raising important First Amendment issues. On any of the numerous grounds set forth above, the order to quash should be reversed to permit discovery of Halderman's unique factual knowledge.

**III.    The district court abused its discretion in denying the OAN Defendants' motion for reconsideration.**

**A.    Newly produced evidence by the Michigan Department of State called into question the district court's order on quashal.**

After the district court quashed the subpoena, the OAN Defendants received critical, newly-produced evidence and therefore timely moved for reconsideration. Indicative Ruling Mot., R.32, PageID.#1882-1883. Specifically, the MDOS produced a March 23, 2021 version of Halderman's report on Antrim County incident, as well as evidence revealing that, in the three days between Halderman's March 23, 2021 report and his March 26, 2021 published report, he participated in at least two conference calls with agents of the MDOS and the Michigan Attorney General. Indicative Ruling Mot. Exh. 1, R.32-3, PageID.#1911-1967; Indicative Ruling Mot. Exh. 2, R.32-3, PageID.#1968-1969. During this period, *significant* changes were made to his report—most notably, the removal of language attributing the Antrim County vote miscount to the "design of the Dominion software" as a "contributing factor." Indicative Ruling Mot. Exh. 3, R.32-4, PageID.#2088 (showing change in redline).

As the OAN Defendants explained to the district court, this evidence bears directly on the need to depose Halderman because *only* Halderman can

be required to testify to what was said on those calls, whether he was pressured or influenced to alter his findings, and what facts or reasoning led to the changes. Indicative Ruling Mot., R.32, PageID.#1902-1906, 1907-1908. And as the district court observed at oral argument, "two people can have different views of the same conversation." Hrg. Tr., R.24, PageID.#1804. Only Halderman knows the import he ascribed to what MDOS, the Michigan Attorney General, or Dominion told him and why he altered observations and facts in his March 26th report which go to the heart of the matter in the underlying defamation case. As with the OAN Defendants' other bases for requesting Halderman's testimony, this is not a matter of expert opinion but of direct, personal knowledge of conversations and events that are highly relevant to the OAN Defendants' defense of Dominion's lawsuit. In sum, the new evidence raises additional factual questions that OAN Defendants need to pose to Halderman.

At oral argument, the district court recognized the relevance of whether Halderman was influenced or pressured to alter his findings, even asking whether it would be relevant if Halderman was promised a gift by Dominion's CEO in exchange to "change [his] outlook and make a public statement that this is human error and not anything of fault with the Dominion systems."

59

Hrg. Tr., R.24, PageID.#1803-1804. Yet the court's written opinion granting the motion to quash ignored this line of inquiry entirely, *see* Order, R.28, PageID.#1870, thereby precluding the OAN Defendants from exploring a critical issue that goes directly to its defenses of the reporting and the credibility of the key witness. The new evidence produced after the order of quashal directly bears on, and underscores the importance, of this factual issue.

**B.    Testimony from Dominion's leadership further undercut the district court's quashal order.**

The OAN Defendants also attached to their indicative request for reconsideration additional evidence not originally before the district court, in the form of deposition testimony from Dominion's Vice President of Engineering, Nick Ikonomakis. Indicative Ruling Mot. Exh. 8, R.32-9, PageID.#2116-2120. In it, Ikonomakis admitted he did not have the same level of access to the Antrim County systems as Halderman, such that he relied on Halderman's report to understand fully what had occurred. *Id.* at PageID.#2118-2120. He also testified that Halderman had "direct access to the projects, the system" and that this access resulted in information that Ikonomakis "didn't understand completely until [Halderman] had

investigated what happened and provided the report." *Id.* at PageID.#2119-2120.

This admission from Dominion's own leadership confirms that Halderman's factual knowledge is not only unique, but essential to understanding the technical and factual circumstances of the Antrim County incident. If even Dominion's top technical executive could not replicate or independently obtain the information in Halderman's possession, it is unreasonable and legally unsupportable—and an abuse of discretion—for the district court to quash the subpoena on the premise that the OAN Defendants could simply hire another expert.

### C.    The district court legally erred in determining the significance of new evidence and in denying reconsideration.

In its reconsideration order, the district court minimized the significance of the differences between Halderman's March 23 and 26 reports regarding the Antrim County incident, opining that these differences are "of somewhat limited utility" and relate to "only one of many allegedly defamatory statements." Order, R.42, PageID.#2204. The court further opined that OAN's substantial-truth defense is "likely a weak defense on the merits." *Id.*

This reasoning is improper for several reasons. First, it is not the role of the discovery court to prejudge the strength of a party's defense or to weigh the ultimate merits of the claims in the underlying litigation—over which the discovery court has no jurisdiction. *See U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 26 (D.D.C. 2014) (although an "'ancillary discovery proceeding is . . . an extension of the underlying proceeding,'" "this does not mean that in resolving the discrete, non-party discovery issue before it, the Court may reach into the merits of the underlying case" (quotation omitted)). The question under Rule 45 is whether the requested testimony is relevant and proportional to the needs of the case—not whether the Court believes the defense will ultimately prevail.

Second, the differences between the two versions of the reports go to the heart of the factual dispute over whether the Antrim County miscount was caused by a software glitch, human error, or both. Halderman's final report fundamentally changed his March 23 version in at least four ways germane to Dominion's defamation claim against the OAN Defendants:

| March 23 Report | March 26 Report |
|---|---|
| Although human error was the root cause of the Antrim County incident, the design of the Dominion software was a contributing factor. | Although human error was the root cause of the Antrim County incident, the design of the Dominion software was a contributing factor. |
| I conclude that the incident in Antrim resulted from a series of operator errors, which were compounded by inadequate procedures and insufficiently defensive software engineering. | I conclude that the incident in Antrim resulted from a series of operator errors, which were compounded by inadequate procedures and insufficiently defensive software engineering. |
| The explanations provided by the county and the Department of State are correct that the inaccurate results were a consequence of human errors. However, as I will explain, the problems were more complex than initially understood. The human errors were also compounded by gaps in election procedures and their adherence and by the design of the election software. | The explanations provided by the county and the Department of State are correct that the inaccurate unofficial results were a consequence of human errors. However, as I will explain, but the problems were somewhat more complex complicated than initially understood. The human errors that initiated the incident were also compounded by gaps in election procedures and their adherence and by the design of the. The election software also could have done more to help election staff avoid making mistakes that could lead to erroneous results. |
| Following the November 3, 2020, general election, Antrim County, Michigan published inaccurate election results, attracting national attention | On the night of the November 3, 2020, general election, Antrim County, Michigan published inaccurate unofficial results, attracting national attention |

*See* Indicative Ruling Mot. Exh. 3, R.32-4, PageID.#1971-1972, 1976, 2088.

The OAN Defendants are entitled to explore the factual basis for Halderman's initial observation that "the design of the Dominion software was a contributing factor," as well as the reasons for the subsequent change three days later in his published report. Did he undertake more investigation? Was he pressured or promised anything by state officials and/or Dominion executives?

These issues are not peripheral; they are highly relevant to the truth or falsity of the statements for which OAN is being sued, and only factual questions that Halderman can answer. These shifts in language are crucial because Dominion's defamation claim against the OAN Defendants hinges on the truth or falsity of statements that Dominion's software was responsible for miscounting and flipping votes. If Halderman's observations captured in his post-investigation March 23 report accurately reflected his findings before any external influence, and if his published report (a mere three days later) was changed due to pressure from state officials (as suggested by the evidence of the conference calls among them and Halderman), this would suggest that the public narrative may have been shaped to minimize or exclude the role of Dominion software issues. This is directly relevant to the OAN Defendants' defenses, as evidence that the Dominion software was a contributing factor

could support the OAN Defendants' efforts to establish substantial truth or negate material falsity, an essential element of Dominion's claim.

Finally, the district court did not consider or even address the testimony from Dominion's VP of Engineering, Nick Ikonomakis, testimony in its reconsideration order. Order, R.42, PageID.#2193-2206. This additional evidence directly calls into question the court's premise that the OAN Defendants could simply "hire their own expert" as a substitute for the information they seek from Halderman. *See* Order, R.28, at PageID.#1874. The court's failure to reconsider its prior order, which relied on that premise, constituted an abuse of discretion.

## CONCLUSION

The Court should reverse the order quashing the OAN Defendants' subpoena for Halderman's testimony and the order denying the OAN Defendants' motion for reconsideration, and remand with instructions for the district court to enter an order denying quashal and compelling Halderman to sit for a deposition.

Respectfully submitted,

*/s/   Joseph E. Richotte*
Joseph E. Richotte
Michigan Bar No. P70902
Jennifer A. Dukarski
Michigan Bar No. P74257
BUTZEL LONG, PC
101 N. Main St. #200
Ann Arbor, MI  48104
T: (734) 995-3110
richotte@butzel.com
dukarski@butzel.com

Charles L. Babcock
Texas Bar No. 01479500
Christina M. Vitale
Texas Bar No. 24077610
JACKSON WALKER LLP
1401 McKinney St. #1900
Houston, TX 77010
T: (713) 752-4200
cbabcock@jw.com
cvitale@jw.com

COUNSEL FOR DEFENDANTS-
APPELLANTS

66

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32, I hereby certify that this principal brief contains 12,953 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f). This is a computer-generated document created in Word 365, using 14-point typeface for all text, including footnotes. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

Dated: August 18, 2025

/s/  *Joseph E. Richotte*

Joseph E. Richotte
COUNSEL FOR DEFENDANTS-
APPELLANTS

**CERTIFICATE OF SERVICE**

I certify that on August 18, 2025, a true and correct copy of the foregoing Brief of Appellants was electronically filed with the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, and that all parties required to be served have been served.

Dated: August 18, 2025

/s/  *Joseph E. Richotte*
Joseph E. Richotte
COUNSEL FOR DEFENDANTS-
APPELLANTS

ADDENDUM

| Record Entry | PageID # | Description of Document |
|---|---|---|
| 1 | 1–49 | Halderman's Motion to Quash Subpoena ("Quashal Mot.") |
| 1-1 | 54–63 | Exhibit 1-A to Motion to Quash (Deposition Subpoena) ("Quashal Mot. Exh. 1-A") |
| 1-1 | 74–91 | Exhibit 1-C to Motion to Quash (Email Correspondence Between Counsel) ("Quashal Mot. Exh. 1-C") |
| 1-1 | 92–305 | Exhibit 1-D to Motion to Quash (Dominion's Complaint) ("Quashal Mot. Exh. 1-D") |
| 1-2 | 399–405 | Exhibit 2 to Motion to Quash (Halderman Declaration) ("Quashal Mot. Exh. 2") |
| 21 | 1536–1572 | OAN Defendants' Response to Motion to Quash ("Response") |
| 21-2 | 1576–1583 | Exhibit 1 to Response (Edwards Declaration) ("Response Exh. 1") |
| 21-3 | 1584–1589 | Exhibit 1-A to Response (Steve Friess Article) ("Response Exh. 1-A") |
| 21-4 | 1590–1596 | Exhibit 1-B to Response (Teresa Lawlor Article) ("Response Exh. 1-B") |
| 21-5 | 1597–1608 | Exhibit 1-C to Response (Halderman Blog Post) ("Response Exh. 1-C") |
| 21-6 | 1609–1613 | Exhibit 1-D to Response (Halderman Tweets) ("Response Exh. 1-D") |
| 21-7 | 1614–1668 | Exhibit 1-E to Response (Halderman March 26, 2021 Report) ("Response Exh. 1-E") |

| | | |
|---|---|---|
| 21-9 | 1688–1696 | Exhibit 1-G to Response (Email Correspondence) ("Response Exh. 1-G") |
| 21-10 | 1697–1699 | Exhibit 1-H to Response (Email Correspondence) ("Response Exh. 1-H") |
| 21-11 | 1700–1701 | Exhibit 1-I to Response (Email Correspondence) ("Response Exh. 1-I") |
| 21-13 | 1705–1708 | Exhibit 1-K to Response (Email Correspondence) ("Response Exh. 1-K") |
| 21-17 | 1741–1751 | Exhibit 1-O to Response (Contract Between MI AG and Halderman) ("Response Exh. 1-O") |
| 24 | 1769–1806 | Transcript of Hearing on Motion to Quash ("Hrg. Tr.") |
| 28 | 1859–1875 | Opinion and Order on Motion to Quash ("Order") |
| 32 | 1881–1909 | OAN Defendants' Motion for Indicative Ruling ("Indicative Ruling Mot.") |
| 32-2 | 1911–1967 | Exhibit 1 to Motion for Indicative Ruling (Halderman March 23, 2021 Report) ("Indicative Ruling Mot. Exh. 1") |
| 32-3 | 1968–1969 | Exhibit 2 to Motion for Indicative Ruling (Outlook Calendar Invites) ("Indicative Ruling Mot. Exh. 2") |
| 32-4 | 1970–2105 | Exhibit 3 to Motion for Indicative Ruling (Redline of Halderman Reports) ("Indicative Ruling Mot. Exh. 3") |
| 32-5 | 2106–2108 | Exhibit 4 to Motion for Indicative Ruling (MDOS Press Release) ("Indicative Ruling Mot. Exh. 4") |

| | | |
|---|---|---|
| 32-9 | 2116–2120 | Exhibit 8 to Motion for Indicative Ruling (Nick Ikonomakis Deposition) ("Indicative Ruling Mot. Exh. 8") |
| 42 | 2193–2206 | Opinion and Order on Motion for Indicative Ruling ("Order") |