No. 25-1100 & No. 25-1531

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

J. ALEX HALDERMAN,

*Plaintiff-Appellee*,

v.

HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK;
CHARLES HERRING; and ROBERT HERRING, SR.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Michigan
Hon. David M. Lawson
District Court Case No. 2:24-mc-51057

**Brief of Appellee J. Alex Halderman**

David D. Cross
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
Tel.: (202) 346-4000
dcross@goodwinlaw.com

Christopher J.C. Herbert
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
cherbert@goodwinlaw.com

September 29, 2025             *Counsel for Plaintiff-Appellee*

i

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ....................................... vii

INTRODUCTION ...................................................................................... 1

STATEMENT OF THE ISSUES................................................................... 4

STATEMENT OF THE CASE ..................................................................... 4

    I.    Antrim County, Dominion's lawsuit, and Dr. Halderman's analysis. ........................................................................................ 4

    II.    OAN Defendants' subpoenas, Dr. Halderman's motion to quash, and the district court's orders. ......................................10

SUMMARY OF ARGUMENT ....................................................................15

STANDARD OF REVIEW .........................................................................18

ARGUMENT ............................................................................................19

    I.    The district court properly exercised its discretion in quashing the subpoena under Rule 45(d)(3)(B)(ii)..................19

        A.    OAN Defendants seek Dr. Halderman's unretained expert opinion testimony................................................ 20

        B.    OAN Defendants are not entitled to examine Dr. Halderman about the facts underlying his opinions........................................................................... 27

        C.    OAN Defendants otherwise identify no basis for reversal. .......................................................................... 36

    II.    The district court properly exercised its discretion in declining to order Dr. Halderman's deposition under Rule 45(d)(3)(C). ................................................................................ 39

        A.    OAN Defendants have not demonstrated substantial need and undue hardship. .............................................. 40

B.    That OAN Defendants offered in their briefing
below to compensate Dr. Halderman does not
justify reversal. ................................................................. 53

CONCLUSION ........................................................................................ 54

CERTIFICATE OF COMPLIANCE.................................................... 56

CERTIFICATE OF SERVICE............................................................. 57

ADDENDUM .......................................................................................... 58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ...................................................................18

*A Renewed Mind v. Weatherby*,
    675 F. App'x 572 (6th Cir. 2017)............................................................. 48

*Bison Pipeline, LLC v. 102.84 Acres of Land*,
    560 F. App'x 690 (10th Cir. 2013).......................................................... 37

*Bongartz v. State Farm Fire & Cas. Co.*,
    1994 WL 315240 (6th Cir. June 29, 1994) ...................................40, 49, 50

*Boykin v. Fam. Dollar Stores of Michigan, LLC*,
    3 F.4th 832 (6th Cir. 2021)......................................................................51

*Brown v. Tidwell*,
    169 F.3d 330 (6th Cir. 1999)................................................................... 38

*Chavez ex rel. Chavez v. Bd. of Educ. of Tularosa Mun. Sch.*,
    2007 WL 1306734 (D.N.M. Feb. 16, 2007) ............................................ 35

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
    767 F. Supp. 3d 495 (E.D. Mich. 2025)...................................................21

*Cook v. Cleveland State Univ.*,
    13 F. App'x 320 (6th Cir. 2001) ..............................................................19

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1998)....................................................................41

*Doering v. Koppelberger*,
    2019 WL 4732725 (Mich. Ct. App. Sept. 26, 2019)................................ 30

*Gjokaj v. I.N.S.*,
    96 F. App'x 301 (6th Cir. 2004).............................................................. 37

iv

*Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*,
  2007 WL 1051759 (D. Utah Apr. 2, 2007) ............................................. 28

*Gritton v. Disponett*,
  332 F. App'x 232 (6th Cir. 2009) ........................................................... 18

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
  763 F.3d 524 (6th Cir. 2014) ........................................................... 19, 37

*Kaplan v. Gen. Elec. Co.*,
  2025 WL 583112 (D.N.J. Feb. 23, 2025) ............................................... 44

*Kaufman v. Edelstein*,
  39 F.2d 811, 822 (2d Cir. 1976) ........................................................... 29

*Kissel v. Nelson Packing Co.*,
  273 N.W.2d 102 (Mich. App. Ct. 1978) ................................................ 30

*Klabunde v. Stanley*,
  181 N.W.2d 918 (Mich. 1970) .............................................................. 30

*Leslie v. McGrath*,
  227 F. App'x 565 (9th Cir. 2007) ......................................................... 37

*Lyons v. My Pillow, Inc.*,
  2023 WL 8450724 (6th Cir. Dec. 6, 2023) ............................................ 18

*In re Multi-Piece Rim Prods. Liab. Litig.*,
  653 F.2d 671 (D.C. Cir. 1981) .............................................................. 19

*Mylan Inc. v. Analysis Grp., Inc.*,
  2018 WL 5043157 (D. Kan. Oct. 17, 2018) ........................................... 29

*Pickett v. City of Cleveland, Ohio*,
  140 F.4th 300 (6th Cir. 2025) .............................................................. 19

*In re Pub. Offering PLE Antitrust Litig.*,
  233 F.R.D. 70 (D. Mass. 2006) ............................................................ 28

*Putman v. Lima Auto Mall, Inc.*,
  2009 WL 35275 (S.D. Ill. Jan. 6, 2009) ................................................ 31

v

*S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*,
  763 F. App'x 401 (6th Cir. 2019) ............................................................ 49

*In re Schaefer*,
  331 F.R.D. 603 (W.D. Pa. 2019) ......................................................*passim*

*Stampley v. State Farm Fire & Cas. Co.*,
  23 F. App'x 467 (6th Cir. 2001) ........................................................40, 49

*Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*,
  218 F.R.D. 325 (D.D.C. 2003) ................................................................ 24

*Stone v. High Mountain Mining Co., LLC*,
  2022 WL 1183724 (D. Colo. Apr. 21, 2022) ........................................... 29

*Thompson v. Glenmede Tr. Co.*,
  1995 WL 752422 (E.D. Pa. Dec. 19, 1995) ....................................... 22, 25

*United States v. White*,
  492 F.3d 380 (6th Cir. 2007) ................................................................. 26

*US Dominion, Inc. v. Fox News Network, LLC*,
  293 A.3d 1002 (Del. Super. Ct. 2023) ................................................... 50

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
  304 F.R.D. 379 (S.D.N.Y. 2015) ............................................................ 39

*Xactware Sols., Inc. v. Buildxact Software Ltd.*,
  95 F.4th 810 (4th Cir. 2024) .................................................................. 38

*Zell v. Klingelhafer*,
  751 F. App'x 641 (6th Cir. 2018) ............................................................ 51

## Other Authorities

Fed. R. Civ. P. 45 .................................................................................*passim*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal principally concerns an important protection in Federal Rule of Civil Procedure 45, Rule 45(d)(3)(B)(ii), which empowers district courts to quash third-party subpoenas seeking forced opinion testimony from unretained experts. The district court appropriately exercised its broad discretion in affording that protection to Plaintiff-Appellee, Dr. J. Alex Halderman, an expert in the field of election security, who Defendant-Appellants ("OAN Defendants") want to depose because of and about his expert opinions. On appeal, OAN Defendants argue for reversal based on certain arguments that would undermine Rule 45's protections for unretained experts and others that misconstrue the factual record, the law, and the district court's opinions. Oral argument will assist the Court in ensuring that it has a full view of the facts and the law before rendering a decision.

## **INTRODUCTION**

U.S. Dominion, Inc. (Dominion) provides electronic voting equipment and software to various states.  In 2021, Dominion sued OAN Defendants for defamation over statements made on their network about the 2020 Presidential election, for which Dominion's products were used in Michigan. Among the statements Dominion challenges is one attributing inaccurate, unofficial election results initially reported for Antrim County, Michigan, to a Dominion software "glitch."  Following the election, Michigan engaged Dr. Halderman, a renowned expert in election security, to render an opinion on the causes of the Antrim County reporting.  After a thorough analysis, Dr. Halderman opined that the reporting was "a consequence of human errors"—not a software "glitch."  Dr. Halderman is not a party to Dominion's defamation suit and no party there has retained him as an expert.

In 2024, however, OAN Defendants served Dr. Halderman with a Rule 45 deposition subpoena, seeking to depose him about his Antrim County analysis and opinions—notwithstanding that the final opinions he reached are inconsistent with OAN Defendants' Antrim County statements.  Because Rule 45 does not entitle them to conscript Dr. Halderman's unretained expert analysis, the district court quashed the subpoena and denied OAN Defendants' motion for reconsideration.

On appeal, OAN Defendants claim that the protections for forced expert testimony in Rule 45(d)(3)(B)(ii) do not apply because they purportedly seek only "factual observations" Dr. Halderman made during his analyses, and not also his opinions. They also claim that, even if Rule 45(d)(3)(B)(ii) does apply, the district court should have ordered Dr. Halderman's deposition under Rule 45(d)(3)(C), because they have a "substantial need" for the information they seek and they can only get it from Dr. Halderman. OAN Defendants are wrong on both counts and have not identified any abuse of discretion warranting reversal.

First, the district court properly exercised its broad discretion in determining that Rule 45(d)(3)(B)(ii) empowered it to quash the subpoena. Notwithstanding OAN Defendants' characterizations of the information they seek, they fundamentally want to probe Dr. Halderman's opinions about Dominion's voting machines and Antrim County. Indeed, OAN Defendants admitted so below, and posit here several potential lines of inquiry that ask Dr. Halderman to provide quintessential expert opinion testimony.

Even if it were true that OAN Defendants only want to ask Dr. Halderman about the "factual observations" made in reaching his opinions, that still would not entitle them to his deposition. Dr. Halderman's "observations" cannot be divorced from the context in which he made them—

while performing expert analyses to reach informed opinions. Rule 45(d)(3)(B)(ii) rightfully protects that type of information, since not doing so would cause the very same problems that the rule is meant to prevent.

OAN Defendants have otherwise identified no abuse of discretion in the district court's decision-making. They point to one seeming misinterpretation of Rule 45(d)(3)(B)(ii), but they waived that issue by not flagging it for the district court in their motion for reconsideration. And because that error is harmless in any event, it is not a basis for reversal.

Second, the district court correctly declined to order Dr. Halderman's deposition under Rule 45(d)(3)(C). OAN Defendants never explained why they purportedly cannot get from other sources the information they seek from Dr. Halderman, and they still fail to do so here. To the extent they want to ask about conversations Dr. Halderman might have had, they have offered no reason why they cannot depose the counterparties to any such conversations. And OAN Defendants' arguments that they cannot obtain the same information that Dr. Halderman reviewed in conducting his fulsome Antrim County analysis misunderstand what Dr. Halderman had access to in performing that work. These shortcomings alone were enough for the district court to exercise its discretion in favor of quashing the subpoena.

For these reasons, and others discussed below, the Court should affirm.

3

## **STATEMENT OF THE ISSUES**

1.    Whether the district court properly exercised its discretion under Rule 45(d)(3)(B)(ii) to quash a deposition subpoena that seeks unretained expert opinion testimony and other protected information from Dr. Halderman.

2.    Whether the district court properly exercised its discretion in refusing to order Dr. Halderman's deposition under Rule 45(d)(3)(C) where OAN Defendants did not demonstrate a substantial need for Dr. Halderman's testimony that they cannot otherwise meet without undue hardship.

## **STATEMENT OF THE CASE**

## **I.    Antrim County, Dominion's lawsuit, and Dr. Halderman's analysis.**

On November 3, 2020, Antrim County reported unofficial election results that were not accurate.  Response Exh. 1-E, R.21-7, PageID.1617.  The story gained wide-spread media attention, including from OAN Defendants' network, One America News.  On November 21, for example, OAN aired a special titled "Dominion-izing the Vote."  Order, R.28, PageID.1862.  In it, an OAN correspondent claimed that "Dominion captured headlines when it was discovered it had glitched 6,000 votes, giving Biden a fraudulent win. This was not an isolated event."  *Id.*

4

Based on this and other reporting, in 2021 Dominion sued OAN Defendants in the United States District Court for the District of Columbia for defamation *per se*.  Order, R.28, PageID.1860.  Its 212-page complaint identifies at least 25 OAN segments containing statements alleged to be false and defamatory concerning Dominion and its software.  Quashal Mot. Exh. 1-D, R.1-1, PageID.248-304.  Among them is the November 2020 statement that Dominion's software "glitched" to give "Biden a fraudulent win" in Antrim County.  *Id.* at PageID.251.  Dominion alleges that, at the time that statement was made, it was demonstrably false based on reports and official statements from earlier that month explaining that "what occurred in Antrim County was the result of human error."  *Id.* at PageID.158-59.  Although Dominion's complaint cites a number of such reports and statements, it does not mention Dr. Halderman.

As initial reports about the Antrim County unofficial results were coming out, Dr. Halderman watched events unfold based on publicly available information.  The day after the election, for example, he took to a private email listserv flagging an article about Antrim County to its participants and inquiring, "What do folks make of this?"  Response Exh. 1-G, R.21-9, PageID.1693.  Based on the public reporting that he had read, Dr. Halderman was not sure of the "source of the problem," but ventured

5

some guesses, classifying those potential explanations as a "bug." *Id.* Given his expertise in election security, Dr. Halderman also received media inquiries about providing a possible explanation. *Id.* at PageID.1691.

Dr. Halderman's "research focuses on computer security and privacy, with an emphasis on problems that broadly impact society and public policy." Quashal Mot. Exh. 2, R.1-2, PageID.400-401. Given his research in the area, he has come to believe that "having an accurate, credible technical explanation" for the "cause[]" of any election-reporting problems "is important for reassuring the public." Response Exh. 1-G, R.21-9, PageID.1691. Thus, on November 6, days after the unofficial results were reported, Dr. Halderman spoke with the Michigan election director to try to "piece[] together more of the puzzle." *Id.* at PageID.1691-1692.

On a private email listserv, Dr. Halderman explained that the "election definition files" (which are "digital descriptions of the ballot") were "revised before the election to correct a problem with a missing race." Response Exh. 1-G , R.21-9, PageID.1691; Response Exh. 1-E, R.21-7, PageID.1621. "The tabulators" (*i.e.*, ballot scanners) "were apparently loaded with the new version" of the election definition file. Response Exh. 1-G, R.21-9, PageID.1691. But "the EMS" (the "election management system" used to "aggregate results" from the scanners) was "still running the old version."

6

*Id.*; Response Exh. 1-E, R.21-7, PageID.1622. "Dominion's software records totals by ballot position, and so the results showed up for the wrong candidates when the media was loaded into the EMS." Response Exh. 1-G, R.21-9, PageID.1691-1692. Based on the limited information available to Dr. Halderman at that early stage, he explained that, although the reporting was fundamentally the result of operator error, he thought the software could have done more to guard against it:

> Calling this "human error" places the blame on election officials, but under these facts, I'm saying it should instead be considered a software defect, albeit one that's only triggered when operators miss an important step. The software should protect election workers (and the public) from such an occurrence.

*Id.* at PageID.1692

The next day, Dr. Halderman took to Twitter to report "the likely technical explanation" and provide his "assessment." Response Exh. 1-D, R.21-6, PageID.1610. Citing to a public press release, he explained that "[i]t was human error" related to the election definition files that likely caused the reporting problem. *Id.* In his assessment, however, "[d]efensive software engineering should help prevent such reporting glitches even if operators make a mistake." *Id.* at PageID.1611.

On November 12, and in response to "conspiracy theories" being spread about Dominion and its software, Dr. Halderman contacted a

Dominion executive offering his help in dispelling them. Response Exh. 1-H, R.21-10, PageID.1699. Dr. Halderman received no response until over a month later, on December 17. *Id.* at PageID.1698. Dr. Halderman did not respond until January 2022. Response Exh. 1-K, R.21-13, PageID.1706. This was in part because, on December 14, 2020, he was retained by the Michigan Attorney General (AG) to "provide expert witness services in the matter of *Bailey v Antrim Co & Benson*, Antrim Circuit Court No. 20-009238-CZ"—the subject of which was the Antrim County election results—and "other related matters." Response Exh. 1-O, R.21-17, PageID.1742. OAN Defendants do not know if any additional conversations between Dominion and Dr. Halderman ever took place. Hrg. Tr., R.24, PageID.1785.

Dr. Halderman's retained work resulted in a report published on March 26, 2021. His March 26 expert report explains that the Michigan Department of State (DOS) and the AG retained him to, among other things, opine on "[w]hat caused" the reporting errors in Antrim County. Response Exh. 1-E, R.21-7, PageID.1617. Dr. Halderman's final report goes through in painstaking detail the materials that he reviewed, the process that he followed, and his resultant conclusions about the cause of what happened in Antrim County. It explains that he "examined a forensic image of the hard drive from Antrim County's EMS" that the AG provided to him. *Id.* at

8

PageID.1622.  That forensic image, he reasoned, appeared to be the same one that another group, Allied Security Operations Group (ASOG), had collected on December 6, 2020, and on which it conducted its own analysis on behalf of the plaintiffs in the *Bailey* case.  *Id.* at PageID.1622-1623.  Dr. Halderman also reviewed "forensic images" of memory cards used in Antrim County ballot scanners.  *Id.* at PageID.1623-1624.

To render his expert opinions, Dr. Halderman extracted from the forensic image of the EMS "the database corresponding to the November 2020 election" and analyzed it using commercially available software and software that he created.  Response Exh. 1-E, R.21-7, PageID.1622-1623.  He then analyzed the "log files stored in the EMS and memory cards," which "record[] the actions that users perform."  *Id.*  Dr. Halderman also "further analyzed the EMS by booting a copy of the hard drive in a virtual machine and interacting with the software."  *Id.* at PageID.1624.  He was able to do so without any passwords by using certain techniques to "circumvent[]" all password prompts.  *Id.*  Dr. Halderman explained that using similar techniques "on the real EMS would require physical access."  *Id.*

Based on his analysis, Dr. Halderman concluded that, "[a]fter making last-minute revisions to certain ballot designs, workers made ... key human errors that directly led to inaccurate results."  Response Exh. 1-E, R.21-7,

PageID.1661.  He explained, however, that he believed that "Dominion ... missed opportunities for the software to do more to [help] election staff avoid making mistakes."  *Id.* at PageID.1662.  Among his report's concluding recommendations was that "Dominion should enhance [its software] to verify that the election definition on a memory card being loaded is compatible with the one used by the EMS."  *Id.* at PageID.1663.  Dr. Halderman released a peer-reviewed study of his Antrim County analysis in August 2022, which likewise concluded that the cause of the Antrim County incident was human error, and opined that Dominion "missed opportunities for the software to do more to help election staff avoid making mistakes." Response Exh. 1-F, R.21-8, PageID.1684.

## II.  OAN Defendants' subpoenas, Dr. Halderman's motion to quash, and the district court's orders.

OAN Defendants first subpoenaed Dr. Halderman in the spring of 2024, initially only for documents.  Response, R.21, PageID.1549; *see* Quashal Mot. Exh. 1-F, R.1-1, PageID.310-319 (document subpoena). Dr. Halderman produced over 1,000 pages of materials in response, after negotiating a narrowed scope.  Quashal Mot. Exh. 1-G, R.1-1, PageID.323.

In July 2024, OAN Defendants issued a second subpoena commanding Dr. Halderman to appear for a deposition.  Quashal Mot. Exh. 1-A, R.1-1, PageID.54-63.  After counsel for the parties landed on a date on which

10

Dr. Halderman could be available, they conferred over the scope of any deposition. Quashal Mot. Exh. 1-C, R.1-1, PageID.82-89. Coming out of those discussions, counsel for Dr. Halderman—the same counsel with whom OAN Defendants had been dealing from the beginning—said that he did not see the parties "reaching agreement." *Id.* at PageID.82. Counsel explained that the subject of the deposition, "what Dr. Halderman did and learned in the course of writing his March 2021 report" about Antrim County, was just "seek[ing] expert testimony without retaining Dr. Halderman as an expert." *Id.* As such, he advised that Dr. Halderman would be moving to quash. *Id.*

Dr. Halderman's motion to quash argued, among other things, that Rule 45(d)(3)(B)(ii) shields him from being forced to testify about his unretained expert analysis. Quashal Mot., R.1, PageID.33-40. After full briefing and a hearing, the district court quashed the subpoena on that basis. Order, R.28, PageID.1868. In a well-reasoned opinion, the district court first concluded that OAN Defendants' attempts to paint Dr. Halderman as a fact witness were unpersuasive. *Id.* at PageID.1869-1872. Dr. Halderman's involvement "in studying the Antrim County election process," the court reasoned, "amply demonstrates his expert status." *Id.* at PageID.1870-1871.

The court then acknowledged that Dr. Halderman's "status as an expert does not completely foreclose the defendants' right to depose him."

Order, R.28, PageID.1872.  OAN Defendants might be able to obtain his testimony, the court continued, if it would "describe specific occurrences in dispute."  *Id.* at PageID.1873.  "[B]ased on other precedents" the court determined that it would not, since Dr. Halderman "was not involved in the actual transactions in Antrim County" in "either the system implementation or the voting counting"; rather, "[h]e came along in Antrim County as the dust was settling as a hired investigator."  *Id.* at PageID.1873-1874.  The court then commented that "even if [OAN Defendants] could establish that the subject of their deposition inquiry will focus on the 'specific occurrences in dispute' in their case, the information they seek plainly 'results from the expert's study that was not requested by a party.'"  *Id.* at PageID.1874 (quoting Fed. R. Civ. P. 45(d)(3)(B)).

In all, the district court viewed OAN Defendants as "apparently want[ing] Dr. Halderman to repeat under oath an opinion that a number of votes in Antrim County were 'flipped' because of a software defect," and "that the incorrect vote tally there was not due to human error."  Order, R.28, PageID.1874.  Since "his more pointed testimony would be in the form of opinions," which he "cannot be compelled to share … involuntarily," *id.* at PageID.1860, the district court concluded that Rule 45(d)(3)(B)(ii) permitted it to quash the subpoena, *id.* at PageID.1874.  And because OAN

Defendants had "not even attempted to demonstrate 'a substantial need' for Halderman's testimony 'that cannot be otherwise met without undue hardship,'" the district court quashed the deposition subpoena.  *Id.* at PageID.1874 (quoting Fed. R. Civ. P. 45(d)(3)(C)(i)).

After noticing an appeal, OAN Defendants filed a Rule 62.1 motion for indicative ruling, contending that the district court should indicate that it would grant a Rule 59(e) motion for reconsideration.  Indicative Ruling Mot., R.32, PageID.1886-1887.  That motion was primarily rooted in new evidence obtained from the Michigan DOS via a Rule 45 subpoena: (1) a draft of Dr. Halderman's Antrim County report, dated March 23, 2021, and (2) evidence of calls between Dr. Halderman and Michigan officials occurring between that date and the March 26 issuance of his final report.  *Id.* at PageID.1882-1885.  The motion also asked the district court to reconsider its determination that Dr. Halderman's Antrim County conclusions constitute his opinions and attempted to bolster its substantial need arguments via deposition testimony from a Dominion executive.  *Id.* at PageID.1898-1908.

In a second thorough opinion, the district court indicated that it would deny OAN Defendants' motion.  As relevant here, the court did not agree that the March 23 draft report was enough for it to reconsider its decision.  It explained that the March 23 draft report "at best" "suggests that Dr.

Halderman saw the software as a contributing factor to the incident, but when read in its entirety, it is clear that his prior draft faulted the software for not flagging the election workers' own errors, not 'glitching.'" Order, R.42, PageID.2204.  In any event, the court explained, OAN Defendants' baseless suggestion that "Dr. Halderman somehow altered his conclusions at the state officials' … request would not change [its] conclusion that the defendants have not shown a need for his uncompensated expert opinion testimony." *Id.* at PageID.2200.

The court then reiterated its prior conclusion that "[i]t is apparent" that OAN Defendants' seek to depose Dr. Halderman because of and about his opinions on Antrim County in the hopes of buttressing their substantial truth defense in the underlying litigation.  Order, R.42, PageID.2202.  Although the court viewed that defense as of "limited utility" and "weak," it acknowledged that "does not necessarily defeat the defendants' quest for [Dr. Halderman's] testimony about the incident if he truly has unique information or a unique perspective." *Id.* at PageID.2204.  But Dr. Halderman does not have "unique information or a unique perspective," the court reasoned, because OAN Defendants did not show that "the materials Dr. Halderman examined are somehow irreplicable" and did "not represent" that they are "unavailable." *Id.* at PageID.2205  After addressing other

14

factors relevant to the analysis, the district court reaffirmed its decision to quash the subpoena. *Id.*

OAN Defendants appealed again, and this Court consolidated their two appeals for briefing and argument.

## SUMMARY OF ARGUMENT

I.    The district court properly exercised its discretion in determining that Rule 45(d)(3)(B) empowered it to quash OAN Defendants' subpoena because it seeks Dr. Halderman's unretained expert "opinion[s]" and not factual "information" that "describe[s] specific occurrences in dispute." Fed. R. Civ. P. 45(d)(3)(B)(ii). OAN Defendants in fact admitted below that they seek to ask Dr. Halderman about conclusions he reached concerning Dominion's voting systems and opinions he rendered on Antrim County. Given those admissions, and the substance of the testimony OAN Defendants intend to elicit from Dr. Halderman, the district court rightly concluded that Dr. Halderman's "testimony would be in the form of opinions," which he "cannot be compelled to share … involuntarily." Order, R.28, PageID.1860.

OAN Defendants criticize the district court for purportedly misunderstanding that, although Dr. Halderman's opinions are protected, the facts on which they are based categorically are not. But OAN Defendants

provide no support for that view of the law, which would result in the very same problems that Rule 45(d)(3)(B)(ii) was designed to prevent: denying experts the ability to bargain for the value of their services and infringing on their intellectual property.  The purported "factual" information they seek from Dr. Halderman falls well within the rule's protections, regardless of whether Dr. Halderman learned it before or after Michigan retained him to perform his Antrim County analysis.

While OAN Defendants are correct that Rule 45(d)(3)(B)(ii) only applies to factual "information" to the extent it "does not describe specific occurrences in dispute" *and* "results from the expert's study that was not requested by a party," the district court's seeming suggestion otherwise is not a basis for reversal.  OAN Defendants waived the issue by not raising it in their motion for reconsideration.  Any error is also harmless since the district court correctly determined that any factual "information" OAN Defendants seek *both* "does not describe specific occurrences in dispute" and "results from" Dr. Halderman's "study" that no party requested.  Rule 45(d)(3)(B)(ii) also authorizes district courts to quash subpoenas seeking expert opinion testimony in their entirety, even if they also seek some factual information. And the subpoena here overwhelmingly seeks expert opinion testimony.  The district court was accordingly well within its discretion in quashing the

subpoena in full.

II.    The district court did not abuse its discretion in declining to order Dr. Halderman's deposition under Rule 45(d)(3)(C).  Because OAN Defendants never demonstrated that the information they seek from Dr. Halderman is unavailable from other sources—namely, information about conversations he either had or might have had with Dominion executives and Michigan officials, and his knowledge of Antrim County's EMS—the district court properly determined that they failed to show a "substantial need" for his testimony "that cannot be otherwise met without undue hardship."  Fed. R. Civ. P. 45(d)(3)(C)(i).  That determination alone was enough for the district court to exercise its discretion in favor of quashing the subpoena, regardless of how important OAN Defendants believe the information is to the underlying litigation.

For that reason, OAN Defendants' claims that the district court improperly waded into the merits of the underlying litigation constitute no basis for reversal.  The district court did nothing improper, correctly recognizing that its view of the merits does not "defeat" OAN Defendants' "quest" for Dr. Halderman's testimony.  Order, R.42, at PageID.2204.  And each aspect of the district court's opinions with which OAN Defendants take issue had no impact on the actual basis for the district court's decision: OAN

Defendants did not show that Dr. Halderman is the only source of whatever information they seek.

Since OAN Defendants did not meet their burden of showing "substantial need" and "undue hardship," their offer of compensation is beside the point.  Under Rule 45(d)(3)(C), they needed to make those showings *and* "ensure[]" that Dr. Halderman "will be reasonably compensated."  That the district court at times characterized OAN Defendants as seeking "uncompensated expert testimony" is therefore not a basis for reversal.

## STANDARD OF REVIEW

The Court's review of both the district court's initial decision to quash and its denial of OAN Defendants' motion for reconsideration is for abuse of discretion.  *Lyons v. My Pillow, Inc.*, 2023 WL 8450724, at *2 (6th Cir. Dec. 6, 2023) (decision on motion to quash); *Gritton v. Disponett,* 332 F. App'x 232, 238 (6th Cir. 2009) (decision on motion for reconsideration).

"An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.*" Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012).  This court "will not find an abuse of discretion in the absence of a

'definite and firm conviction' that such an error occurred." *Pickett v. City of Cleveland, Ohio*, 140 F.4th 300, 307 (6th Cir. 2025).

"A district court has broad discretion in its resolution of discovery problems that arise in cases pending before it." *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981). "[T]he scope of appellate review is equally narrow when the discovery pertains to litigation pending elsewhere." *Id.* "Not only [does this Court] review the district court's discovery rulings for abuse of discretion, '[r]eversal is proper only if [it is] firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error.'" *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 538 (6th Cir. 2014) (quoting *Himes v. United States*, 645 F.3d 771, 782 (6th Cir. 2011); *see Cook v. Cleveland State Univ.*, 13 F. App'x 320, 322 (6th Cir. 2001) ("This court will not disturb a district court's decision to quash a subpoena unless the court's ruling affected fundamental rights.").

## ARGUMENT

### I.    The district court properly exercised its discretion in quashing the subpoena under Rule 45(d)(3)(B)(ii).

The district court correctly determined that it was empowered to quash the subpoena under Rule 45(d)(3)(B)(ii). The court properly viewed OAN Defendants' subpoena for what it is: an attempt to obtain unretained expert testimony from Dr. Halderman, not an attempt to secure purely factual

information falling outside of the rule's protections.  OAN Defendants'
arguments on appeal are based on continued mischaracterizations of the
information that they seek and rest upon the incorrect premise that the facts
underlying an expert's opinions are categorically unprotected.  In all, the
district court properly exercised its discretion in determining that OAN
Defendants seek opinions and information protected by Rule 45(d)(3)(B)(ii)
and quashing the subpoena, even though the court, at one point, appeared to
misread one aspect of that rule.  The claimed error is harmless, since it has
no impact on the Rule 45(d)(3)(B)(ii) analysis, and OAN Defendants waived
the issue anyway by not raising it in their motion for reconsideration.

### A.    OAN Defendants seek Dr. Halderman's unretained expert opinion testimony.

Rule 45(d)(3)(B)(ii) allows courts to quash subpoenas that require
"disclosing an unretained expert's opinion."  OAN Defendants' subpoena
seeks to do just that.  As the district court explained, it is "apparent" that
OAN Defendants want to depose Dr. Halderman, not because of any facts
that he knows about Antrim County, but because of the opinions he holds
and his reasoning behind them.  Order, R.42, PageID.2202.  Indeed, OAN
Defendants admitted as much below.  While OAN Defendants claim that the
court misunderstood the nature of the testimony they seek, the "exemplar
questions" they posit overwhelmingly ask Dr. Halderman to explain the

reasoning for his opinions and, in some cases, to provide new expert opinions entirely. The district court therefore did not abuse its discretion in determining that Rule 43(d)(3)(B)(ii) allowed it the quash the subpoena.

>  1. *Rule 45(d)(3)(B)(ii) protects against attempts to compel unretained expert opinion testimony.*

Rule 45(d)(3)(B)(ii) exists to address the "problem" of "the use of subpoenas to compel the giving of evidence and information by unretained experts." Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules—1991 Amendment. Such compulsion "denie[s]" experts "the opportunity to bargain for the value of their services" and threatens their intellectual property. *Id.* The rule accordingly empowers district courts to quash subpoenas that attempt to compel unretained experts to provide, among other things, their expert "opinion" testimony. *See* Fed. R. Civ. P. 45(d)(3)(B)(ii).

Subpoenas seek an unretained expert's opinion when they ask for "testimony that is based on a qualified expert's relevant knowledge, skill, experience, training, or education applied to relevant facts or data." *See In re Schaefer*, 331 F.R.D. 603, 609 (W.D. Pa. 2019) (quashing subpoena under Rule 45(d)(3)(B)(ii)); *see also, e.g.*, *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 767 F. Supp. 3d 495, 504 (E.D. Mich. 2025) (citing *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016)) ("As a general matter, 'expert'

testimony consists of opinions or commentary grounded in 'specialized knowledge,' that is, knowledge that is 'beyond the ken of the average juror.'"). Rule 45(d)(3)(B)(ii) accordingly empowers district courts to quash subpoenas that seek to compel experts to use their relevant expertise to craft new opinions for use in a case in which they are unretained. *See Schaefer*, 331 F.R.D. at 609.

The rule also covers situations in which parties seek to probe the reasoning behind an unretained expert's previously formed opinions. In that case, the requesting party is asking an expert about her "internal mental processes" in coming to an opinion—in other words, "*how* [she] employed her specialized knowledge, skill, experience, training, or education to arrive at, what was in her opinion, an accurate analysis[.]" *See Schaefer*, 331 F.R.D. at 610. Questions to unretained experts asking them "to explain the significance of the information in the[ir] reports and the reasons for [their] conclusions" seek "disclosure of an unretained expert's opinion"; such experts therefore "cannot be viewed simply as a factual witness." *See Thompson v. Glenmede Tr. Co.*, 1995 WL 752422, at *4 (E.D. Pa. Dec. 19, 1995) (quashing subpoena). In short, questions aimed at eliciting "information" about and the "preparation and drafting" of prior opinions "plainly seek the compelled testimony of an unretained expert." *See*

*Schaefer*, 331 F.R.D. at 609 (citing *Thompson*, 1995 WL 752422, at \*4).

> ### 2.   *OAN Defendants seek to compel Dr. Halderman to provide unretained expert opinion testimony.*

Applying these principles, the district court properly concluded that OAN Defendants seek to compel Dr. Halderman's expert testimony.  Order, R.28, PageID.1865, 1875.  In fact, OAN Defendants all but conceded as much below.  They explained in their initial briefing that they want to frame their questioning of Dr. Halderman around his "conclusions about Dominion's voting systems."  Mot. to Quash Opp., R.21, PageID.1563.  They then agreed at the hearing that those "conclusions" are not "factual statement[s]" but Dr. Halderman's "opinion[s]."  Hrg. Tr., R.24, PageID.1800.  And OAN Defendants admitted that they want to ask Dr. Halderman specifically about the conclusions in his March 26 Antrim County report, which they agreed are "his opinion[s]" "based on his study" performed in his expert capacity.  *Id.* at PageID.1794.  Given these concessions, the district court was well within its discretion to conclude that Dr. Halderman's real value to OAN Defendants is not "because of his knowledge of facts relevant to the case," but instead because of the opinions that he holds about the causes of what happened in Antrim County.  Order, R.28, PageID.1872, 1874.

That remains true even though OAN Defendants claim to "have consistently stated they seek to depose Halderman about factual matters."

Appellants' Br., Doc. 27, at 42.  Courts do not have to allow forced expert testimony based on a subpoenaing party's "mischaracteriz[ion] [of] its own actual desires."  *See Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 327 (D.D.C. 2003) (quashing subpoena under Rule 45(d)(3)(B)(ii)).  Rather, courts can and do peek behind the curtain to determine the true nature and purpose of the party's request.  *See, e.g.*, *Schaefer*, 331 F.R.D. at 603.  The court appropriately did so here to determine that, despite what OAN Defendants say, they really want "Dr. Halderman to repeat under oath an opinion that a number of votes in Antrim County were 'flipped' because of a software defect" and that "the incorrect vote tally there was not due to human error."  Order, R.28, PageID.1874.[1]

OAN Defendants nonetheless argue that the district court "misapprehended the nature and purpose" of their subpoena as seeking Dr. Halderman's opinions, rather than facts that he observed.  Appellants' Br., Doc. 27, at 36.  But numerous lines of their proposed questioning ask Dr. Halderman to explain the reasoning behind his Antrim County conclusions—which Rule 45(d)(3)(B)(ii) guards against.  *Supra*, pp. 22-23.

---

[1] That OAN Defendants are relying on Dr. Halderman's opinions to seek summary judgment in the underlying litigation further proves this fact.  *See* ECF No. 248, at 19-20, *US Dominion, Inc., et al. v. Herring Networks Inc., et al.*, No. 21-cv-2130 (D.D.C.) (July 7, 2025).

OAN Defendants want to ask Dr. Halderman to explain, for example, "the basis" for his conclusion that "he found no evidence of an attack on the Antrim County election management system." Indicative Ruling Mot., R.32, PageID.1904. They also want to ask what led Dr. Halderman "to determine" that it was a "coincidence" that "security event logs" in the Antrim County EMS "were purged" and what "led to his determination that the timing of two clerks re-zeroing out memory cards at the same time was not intentional." Appellants' Br., Doc. 27, at 41. And they want Dr. Halderman to explain "the reasons for" the wording changes between his March 23 draft and March 26 final Antrim Couty reports. *Id.* at 73; *see id.* at 68 (seeking testimony about "what facts or reasoning led to the changes"). These inquiries ask Dr. Halderman to explain how or why he arrived at his conclusions, all of which are based on his "specialized knowledge, skill, experience, training, or education." *See Schaefer*, 331 F.R.D. at 609. They therefore ask Dr. Halderman to disclose his unretained expert opinion. *See Thompson*, 1995 WL 752422, at *4. The district court was accordingly correct in concluding that what OAN Defendants really seek is "information about Dr. Halderman's expert opinion as to the *causes* of the mis-tabulation of the election results in Antrim County." Order, R.42, PageID.2202.

Beyond wanting Dr. Halderman to explain his reasoning and mental

processes in reaching his opinions, OAN Defendants also want him to form new ones. They want to ask, for example, whether Dr. Halderman's study yielded "any evidence of vote miscounts" in the "August 2020 election project database" that he reviewed as part of his Antrim County analysis. Appellants' Br., Doc. 27, at 41. That asks Dr. Halderman for an opinion, since it asks him to reach a conclusion—that there was or was not evidence of miscounts—based on his interpretation of data. *See Schaefer*, 331 F.R.D. at 609. That opinion would necessarily depend on Dr. Halderman's expertise, since the "average lay person" does not "command[] a working knowledge" of election databases; would not know what constitutes "evidence of vote miscounts" in them; and Dr. Halderman would have to answer that question by "rel[ying] to a significant degree on specialized knowledge." *See United States v. White*, 492 F.3d 380, 403 (6th Cir. 2007). Dr. Halderman also would be forming a *new* expert opinion in answering that question, since he has not previously opined on the possibility of August 2020 miscounts in Antrim County. Even OAN Defendants agree that Rule 45(d)(3)(B)(ii) applies to that situation. Appellants' Br., Doc. 27, at 39.

At bottom, the district court acted well within its broad discretion in concluding that OAN Defendants, despite what they may say, fundamentally want to depose Dr. Halderman because of and about his expert opinions.

Given Rule 45(d)(3)(B)(ii)'s protections, they are not entitled to do so.

### B. OAN Defendants are not entitled to examine Dr. Halderman about the facts underlying his opinions.

Despite undeniably seeking expert opinion testimony, OAN Defendants argue that they are nonetheless entitled to ask Dr. Halderman about the facts on which his opinions are based. Appellants' Br., Doc. 27, at 37. But that is not (and should not be) the law. Rule 45(d)(3)(B)(ii) protects factual information experts collect in the process of conducting after-the-fact studies. The "factual observations" that OAN Defendants say Dr. Halderman purportedly made all fit within that description, regardless of whether he made them before or after his official Antrim County retention.

> *1. Rule 45(d)(3)(B)(ii) protects information an expert collects in the process of performing an after-the-fact study.*

Beyond protecting an expert's opinions, Rule 45(d)(3)(B)(ii) also applies where a requesting party seeks certain types of factual information— that which "does not describe specific occurrences in dispute" and that "results from the expert's study that was not requested by either party." Interpreting that part of the rule, as the district court explained, courts have "distinguish[ed] between situations where an expert has knowledge of 'specific occurrences in dispute' and situations where an expert merely has relevant knowledge." Order, R.28, PageID.1873.

Experts have information that "describe[s] specific occurrences in dispute" if obtained "directly through the observations of the witness" in real time. *See Schaefer*, 331 F.R.D. at 609. That covers situations where an expert "observed" or "witnessed" the occurrence of an event disputed in the underlying litigation *as it occurred*. *See Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, 2007 WL 1051759, at *3 (D. Utah Apr. 2, 2007). Thus, where one qualified as an expert directly perceived a disputed occurrence as it unfolded, and can therefore describe her perception of what occurred, she may not be entitled to Rule 45(d)(3)(B)(ii)'s protections; provided that the requesting party is not also seeking the expert's opinion. *See, e.g.*, *In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 76-77 (D. Mass. 2006).

Experts do not have information that "describes specific occurrences in dispute," however, if they simply come to learn about the occurrences later, as part of conducting research or some type of study. *See Glaxosmithkline*, 2007 WL 1051759, at *3. In that case, the expert did not perceive the specific occurrence in dispute and therefore does not have information describing it; so Rule 45(d)(3)(B)(ii) applies as long as the expert did not perform the relevant study at the request of a party to the litigation. *See Schaefer*, 331 F.R.D. at 603. Simply put, Rule 45(d)(3)(B)(ii)

protects "information collected as part of the expert's unretained work." *See Mylan Inc. v. Analysis Grp., Inc.*, 2018 WL 5043157, at *7 (D. Kan. Oct. 17, 2018).

OAN Defendants nonetheless argue that Rule 45(d)(3)(B)(ii) categorically does not protect the facts upon which an expert's opinion is based, even those gathered only after the relevant events occurred and while performing an expert study. Appellants' Br., Doc. 27, at 37. But they provide no law supporting that claim. They cite the Second Circuit's decision in *Kaufman v. Edelstein*, but that case predates Rule 45(d)(3)(B)(ii) and does not articulate a rule that information gathered during and because of an expert's after-the-fact study is categorically unprotected. 539 F.2d 811, 822 (2d Cir. 1976). The only other federal case OAN Defendants cite simply acknowledges that those qualified as experts can be called as a witness under Federal Rule of Evidence 701, to the extent they have "personal knowledge" of relevant facts. *See Stone v. High Mountain Mining Co., LLC*, 2022 WL 1183724, at *4 (D. Colo. Apr. 21, 2022). That case does not say that "personal knowledge" includes information an expert learns only by way of a post-hoc expert study, nor did the court elaborate on what exactly the expert there could be forced to testify about. *See id.*

OAN Defendants' state-court cases dealing with compelled testimony

29

of treating physicians do not get them any further.  Those cases say nothing about the scope of what *federal* Rule 45(d)(3)(B)(ii) protects, as the district court rightly acknowledged.  Order, R.42, PageID.2201-2202; *see, e.g.*, *Doering v. Koppelberger*, 2019 WL 4732725, at *3 (Mich. Ct. App. Sept. 26, 2019) (holding it was harmless error to protect unretained treating physician from compelled testimony under Michigan law).  Two of those cases also address subpoenas directed at experts *retained by a party to the case.  See Klabunde v. Stanley*, 181 N.W.2d 918, 920 (Mich. 1970) ("plaintiff's expert witnesses"); *Kissel v. Nelson Packing Co.*, 273 N.W.2d 102, 103 (Mich. App. Ct. 1978) (addressing "defendants' expert medical witness").  So, even if those state cases were governed by the federal rules, Rule 45(d)(3)(B)(ii) would not have applied anyway.  *See* Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules—1991 Amendment (noting rule "does not apply to the expert retained by a party").

Nor does OAN Defendants' position make sense given the purposes of Rule 45(d)(3)(B)(ii).  As noted, an animating purpose behind the rule is to help protect an expert's ability to "bargain for the value of their services." *See* Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules—1991 Amendment. The "value" of an expert's services, however, lies not just in the opinions that they render, but also in the research they undertake and the observations

that they make in forming them. Indeed, an expert's "research and observations can hardly be separated from their expertise." *See Putman v. Lima Auto Mall, Inc.*, 2009 WL 35275, at *2 & n.1 (S.D. Ill. Jan. 6, 2009) (quashing subpoena that was "attempting to gather data and observations"). Experts know the facts and data that they need to gather and analyze to reach informed opinions *because* they are experts. Compelling disclosure of facts and data collected as part of an expert's after-the-fact study therefore denies experts "the opportunity to bargain for the value of their services" in just the same way as does compelled disclosure of the opinions themselves. That is why Rule 45(d)(3)(b)(ii) does (and should) protect them.

> 2. *The information that Dr. Halderman learned during his after-the-fact studies is protected.*

Under Rule 45, none of what OAN Defendants claim to be purely factual information is unprotected—neither what Dr. Halderman "observed" about the Antrim County EMS during his analysis, nor the conversations that he might have had while forming his opinions. *See* Appellants' Br., Doc. 27, at 36-44.

First, whatever Dr. Halderman learned about the Antrim County EMS was based on "observations" he made only *after* any specific occurrences in dispute took place, as part of an expert study. Dr. Halderman "observed" the "contents and state of the machine log data and EMS records" (Appellants'

Br., Doc. 27, at 38), for example, only because of the post-election access that he was given to prepare his Antrim County report (Response Exh. 1-E, R.21-7, PageID.1622-23). He "observed" that "Dominion tabulators and EMS software silently ingested wrong election definition files," that "two different township clerks zeroed out memory cards," and information about the "purging of Dominion security logs" (Appellants' Br., Doc. 27, at 38) only because of that very same post-hoc expert analysis. And OAN Defendants admit that whatever Dr. Halderman learned about "certain vulnerabilities" in the "Dominion system" he learned only later, because of a "forensic examination" he performed as an expert. Appellants' Br., Doc. 27, at 38; *see* Response Exh. 1-C, R.21-5, PageID.1598.

To the extent these are factual observations at all, rather than conclusions that Dr. Halderman reached by interpreting data, they are still protected because Dr. Halderman made them only after the fact, while performing an expert study. *Supra*, pp. 27-29. As the district court correctly explained, Dr. Halderman was not involved with implementing the Antrim County voting system. Order, R.28, PageID.1874. He was not there on election night. *Id.* And he did not observe in real time the "Antrim County EMS and machine logs" or "the sequence of events" leading to the reporting of the unofficial results. Appellants' Br., Doc. 27, at 40. Rather, "he came

32

along in Antrim County as the dust was settling as a hired investigator."
Order, R.28, PageID.1874.  He then "drew inferences about the causes of the
incident after the fact based on data" that he was given—not based on any
"real time" observations of "the software and election system."  Order, R.42,
PageID.2205.  Any information he has stems from his after-the-fact study
and investigation.  Order, R.28, PageID.1875.  Rule 45(d)(3)(B)(ii) therefore
protects it.  *Supra*, pp. 27-29.

Rule 45(d)(3)(B)(ii) also protects whatever Dr. Halderman learned
during his post-retention conversations with Michigan officials between his
March 23 draft and March 26 final reports.  While Dr. Halderman of course
has "personal knowledge" of those conversations, Appellants' Br., Doc. 27, at
68, whatever he learned during them about Antrim County on election day
is still information that he learned only after the fact.  It therefore does not
describe any specific occurrence in dispute.  And it is still information that
Dr. Halderman only learned in the process of performing a study to render
his opinions.  That OAN Defendants baselessly speculate that Michigan
officials could have pressured Dr. Halderman to change his opinions does
not affect those conclusions.  *E.g.*, *id.* at 73.  Fundamentally, OAN
Defendants still want to know "what facts or reasoning led to the changes"
between his March 23 draft and March 26 final reports.  *Id.* at 68.  As the

district court correctly reasoned, "[e]ven if it were true that Dr. Halderman somehow altered his conclusions at the state officials' … request," that would matter only to the extent it bears on the credibility of Dr. Halderman's opinions. Order, R.42, PageID.2200. And Dr. Halderman's credibility is not a specific occurrence in dispute in the underlying litigation.

OAN Defendants' final argument on this point is a timing one, claiming that the district court erred in "disregarding" that Dr. Halderman learned information about Antrim County before his formal retention. Appellants' Br., Doc. 27, at 49-50.[2] While the evidence shows that Dr. Halderman had one conversation with a Michigan official about Antrim County in November 2020, before he was formally retained the following month, the information he learned during that conversation still falls within Rule 45(d)(3)(B)(ii). Dr. Halderman was not in Antrim County on election night, and for days thereafter knew only what was included in news reports and press releases—just like everyone else. Response Exh. 1-G, R.21-9, PageID.1693; *id.* at

---

[2] OAN Defendants appear to lump conversations Dr. Halderman had with Dominion into this argument as well. *See id.* To the extent they do, the argument fails for the same reasons discussed *infra*, pp. 34-36. Moreover, as laid out above, the evidence of communications with Dominion does not support the existence of any pre- or post-retention communications not already included in the record. *Supra*, pp. 7-8. Thus, there is nothing more for OAN Defendants to learn from Dr. Halderman regarding such communications—which are readily available from Dominion as a party to the lawsuit in any event. *Infra*, pp. 41-44.

PageID.1692.  He perceived nothing about the incident as it occurred.  He obtained some information from a Michigan official on November 6, three days after the election.  *Supra*, pp. 5-6.  Whatever Dr. Halderman learned from that conversation he did not learn "directly from contemporaneous, direct observation."  *See* Order, R.28, PageID.1870-71 (internal quotation marks omitted).  The information about the November 6 conversation that OAN Defendants seek therefore does not describe a specific occurrence in dispute.  *Supra*, pp. 27-29.

OAN Defendants appear to suggest that Rule 45(d)(3)(B)(ii) still does not cover that communication, since whatever Dr. Halderman learned from it was not the product of "research study."  Appellants' Br., Doc. 27, at 49.  But that takes far too narrow a view of the term "study."  "Study" as used in Rule 45(d)(3)(B)(ii) is broad—it can encompass an expert's "preparation for her day-to-day employment, books, articles, classes, and presentations."  *See Chavez ex rel. Chavez v. Bd. of Educ. of Tularosa Mun. Sch.*, 2007 WL 1306734, at *6 (D.N.M. Feb. 16, 2007).  Dr. Halderman undertook just such a study here.  Dr. Halderman wanted to use his expertise to help provide "an accurate, credible technical explanation" for the incident.  Response Exh. 1-G, R.21-9, PageID.1691.  So, three days after the unofficial results were reported, Dr. Halderman tried to "piece[] together more of the puzzle" by

talking to a Michigan official so that he could provide such an explanation. *Id.* at PageID.1691. He then reported the results of his study to the public via Twitter. Response Exh. 1-D, R.21-6, PageID.1610-1613. To the extent Dr. Halderman learned anything else from that Michigan official, he did so while engaging in his "own study," only after the Antrim County incident occurred; as explained above, that type of information falls within Rule 45(d)(3)(B)(ii). *See supra*, pp. 27-29; Order, R.28, PageID.1870-71.

In sum, the district court correctly determined that whatever information OAN Defendants seek from Dr. Halderman that could arguably be considered "factual" does not constitute information describing any specific occurrences in dispute. That is information that he obtained only after the fact and only when engaging in expert studies that neither party to the litigation commissioned. It therefore falls within Rule 45(d)(3)(B)(ii).

## C. OAN Defendants otherwise identify no basis for reversal.

OAN Defendants' final Rule 45(d)(3)(B)(ii) argument is that the district court misinterpreted it as applying to factual "information" that "results from the expert's study that was not requested by a party," even if that information *does* "describe specific occurrences in dispute." Appellants' Br., Doc, 27, at 64-66. They submit that the rule is not disjunctive in that manner but is instead conjunctive: it applies to subpoenas seeking purely

36

factual "information" only if that information *both* "does not describe specific occurrences in dispute *and* results from the expert's study that was not requested by a party." *See id.* Any error by the district court on this discrete issue does not support reversal for two reasons.

First, by not raising the point in their motion for reconsideration, OAN Defendants have waived it here. *See Gjokaj v. I.N.S.*, 96 F. App'x 301, 304 n.2 (6th Cir. 2004) (deeming argument not raised in motion for reconsideration waived); *see also Bison Pipeline, LLC v. 102.84 Acres of Land*, 560 F. App'x 690, 695 (10th Cir. 2013) (similar); *Leslie v. McGrath*, 227 F. App'x 565, 566 (9th Cir. 2007) (considering argument "not raise[d] … in … Rule 59(e) motion … waived … on appeal"). The claimed error exists in the district court's initial opinion. Order, R.28, PageID.1874. OAN Defendants sought reconsideration of that opinion but did not raise this error for the district court, even though they could have. They have therefore waived the issue.

Second, the error is not a basis for reversal because it is ultimately harmless. *See Innovation Ventures*, 763 F.3d at 538. As explained above, the district court correctly determined that any factual "information" that OAN Defendants seek *does not* "describe specific occurrences in dispute." Order, R.28, PageID.1869-1874; *supra*, pp. 31-36. It also correctly viewed

any purported factual information as "result[ing] from [Dr. Halderman's] study that was not requested by a party." Order, R.28, PageID.1874. Any factual aspects of the subpoena therefore readily satisfy Rule 45(d)(3)(B)(ii)'s conjunctive test; that is, even if the district court misinterpreted the applicable legal standard, it nonetheless reached the requisite (and correct) findings to satisfy both prongs of the correct one. The Court can affirm on that basis. *See Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (explaining Court "can affirm a decision of the district court on any grounds supported by the record"); *see also Xactware Sols., Inc. v. Buildxact Software Ltd.*, 95 F.4th 810, 812 (4th Cir. 2024) (affirming quashing of subpoena on "different grounds").

For similar reasons, reversal is not warranted even if OAN Defendants are correct that they seek *some* factual "information" that does "describe specific occurrences in dispute" or that does not result from Dr. Halderman's expert "study"—and some of such information is, at most, what OAN Defendants seek. Rule 45(d)(3)(B)(ii) authorizes district courts to quash a subpoena in its entirety if it seeks expert opinion testimony, even if it also seeks some "purely factual" testimony. *See Schaefer*, 331 F.R.D. at 609 (quashing a subpoena where a "majority," but not all, of the testimony sought was "plainly expert, rather than factual"); *In re World Trade Ctr. Lower*

*Manhattan Disaster Site Litig.*, 304 F.R.D. 379, 383 (S.D.N.Y. 2015) (quashing subpoena where "the primary purpose of the testimony would be to present expert opinion evidence," even though "some factual testimony may be elicited").  Indeed, that is why OAN Defendants try so hard to say that they are *not* seeking expert opinion testimony *at all*.  *E.g.*, Appellants' Br., Doc. 27, at 68.

Here, and as explained above, the district court correctly concluded that OAN Defendants overwhelmingly seek protected opinion testimony from Dr. Halderman.  *Supra*, pp. 20-27.  The district court was therefore well within its discretion in determining that Rule 45(d)(3)(B)(ii) applies to OAN Defendants' subpoena and quashing it in full.  Because the court's seeming interpretive error had no impact on that aspect of its discretionary decision, reversal is not warranted.

## II.    The district court properly exercised its discretion in declining to order Dr. Halderman's deposition under Rule 45(d)(3)(C).

Notwithstanding Rule 45(d)(3)(B)(ii)'s protections, courts may order discovery of information encompassed within that rule if the subpoenaing party "shows a substantial need for the testimony ... that cannot be otherwise met without undue hardship" and "ensures that the subpoenaed person will be reasonably compensated."  Fed. R. Civ. P. 45(d)(3)(C).  The district court

correctly determined that OAN Defendants failed to satisfy that burden. OAN Defendants have not come close to meeting the heavy burden that Rule 35(d)(3)(C)'s substantial-need and undue-hardship prong imposes on them. And because OAN Defendants did not meet that burden, whether they have properly ensured that Dr. Halderman will be reasonably compensated is irrelevant.

### A.    OAN Defendants have not demonstrated substantial need and undue hardship.

Satisfying the "substantial need" and "undue hardship" requirement of Rule 45(d)(3)(C) is a "heavy burden"—the same one "that a party seeking disclosure of work product evidence must meet." *Schaefer*, 331 F.R.D. at 609. The inquiry considers "the relative importance of the information ... to the party's case and the ability to obtain that information by other means." *Stampley v. State Farm Fire & Cas. Co.*, 23 F. App'x 467, 471 (6th Cir. 2001). Though, the party's ability to obtain the information or its "substantial equivalent" somewhere else without undue hardship is alone sufficient to deny the requested discovery. *Bongartz v. State Farm Fire & Cas. Co.*, 1994 WL 315240, at*5 (6th Cir. June 29, 1994). "Even assuming that a [requesting party] has a substantial need for such materials." *Id.*

Applying these principles, the district court properly exercised its discretion in favor of quashal. OAN Defendants failed to show that the only

way they can get the information they seek without undue hardship—the substance of Dr. Halderman's conversations and the contents of the Antrim County forensic images he reviewed—is by deposing Dr. Halderman. That alone was reason enough for the court to exercise its discretion in favor of quashing the subpoena. While OAN Defendants say that the district court improperly waded into the merits during its analysis, none of the purported errors they cite are even errors, and none impacted the actual basis for the court's discretionary decision. They therefore do not warrant reversal.

### 1. OAN Defendants have not shown that they can only get the information they seek from Dr. Halderman.

The crux of OAN Defendants' argument is that Dr. Halderman should be compelled to sit for a deposition because only he can provide them with the information they seek. They claim, for example, that only Dr. Halderman "can testify to the content, context, and import of th[e] conversations" that he had with Dominion and Michigan officials. *See* Appellants' Br., Doc. 27, at 31-32. But that is not true. To the extent Dr. Halderman even had conversations with Dominion executives about Antrim County beyond those included in the record—which is speculative, *supra*, pp. 7-8—OAN Defendants offer no explanation why they cannot ask the Dominion executives about them. *Cf. Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998) (affirming quashal of subpoena where requesting party could

have deposed other individuals).  They do not contend that they were somehow incapable of deposing the executives of their "adversary in litigation" under either Rule 30 or Rule 45.  *See* Appellants' Br., Doc. 27, at 31.  Indeed, the record reveals that they deposed at least one of them and is silent as to whether they either deposed or tried to depose the other.  Response Exh. 1-K, R.21-15, PageID.1715.

Even when identifying what, specifically, they would like to know about any conversations, OAN Defendants point to nothing that they cannot obtain from the executives themselves.  Those executives can certainly testify to whether Dr. Halderman "identified facts to [them] that he saw a specific software defect or system vulnerability" in Dominion's software.  Appellants' Br., Doc. 27, at 32.  And the Dominion executives, not Dr. Halderman, would be best positioned to answer questions about whether *they* "promised" Dr. Halderman anything in exchange for him tamping down his opinions about Dominion.  *Id.*  A proposition that is wildly speculative anyway, considering that Dr. Halderman's March 26 report and subsequent peer-reviewed analysis are highly critical of Dominion.  *See, e.g.*, Response Exh. 1-E, R.21-7, PageID.1661-1663 (Dr. Halderman opining that Dominion "missed opportunities for the software to do more" to prevent what occurred in Antrim County); Response Exh. 1-F, R.21-8, PageID.1684 ("Dominion

should revise its software[.]").

OAN Defendants' arguments about Dr. Halderman's conversations with Michigan officials and the changes between his March 23 draft and March 26 final reports suffer from the same flaws. They say that "*only* [Dr. Halderman] can be required to testify to what was said on those calls, whether he was pressured or influenced to alter his findings, and what facts or reasoning led to the changes." Appellants' Br., Doc. 27, at 67-68. But here again, Dr. Halderman was not the only party to those conversations. He had them with "agents of the MDOS and the Michigan Attorney General." Appellants' Br., Doc. 27, at 67. And OAN Defendants make no effort to show, and do not even claim, that they cannot depose those agents about their conversations with Dr. Halderman under Rule 45. Nor do they explain why those agents cannot sufficiently testify to "what was said on those calls"; whether *they* "pressured or influenced" Dr. Halderman to "alter his findings"; or "what facts or reasoning" *they* provided to Dr. Halderman to support the revisions. *Id.* at 68. These officials can certainly relay information about the conversations and are themselves the best source of knowledge as to whether they put pressure on Dr. Halderman.

While OAN Defendants argue that only Dr. Halderman can testify to the "import" he gave any conversations with Dominion and Michigan

officials, Appellants' Br., Doc. 27, at 31, that is not enough for them to meet their burden.  The Rule 45(d)(3)(C) question is not whether OAN Defendants can get exactly what they want—it is whether they have shown that they cannot get access to its "substantial equivalent." *Supra*, p. 40.  Since OAN Defendants have apparently never tried to ask the Dominion executives or Michigan officials about conversations with Dr. Halderman, it is pure speculation that those executives and officials cannot provide OAN Defendants with any information bearing on the "import" that Dr. Halderman might have ascribed to them.  Fundamentally, OAN Defendants have provided no reason why they are incapable of getting the information they seek through deposing the Dominion executives or Michigan officials, rather than Dr. Halderman.  *See Kaplan v. Gen. Elec. Co.*, 2025 WL 583112, at \*6 (D.N.J. Feb. 23, 2025) (quashing subpoena directed at an expert where information about "communications" could be obtained by deposing someone connected to the litigation).

OAN Defendants also argue that the access that Dr. Halderman had to Antrim County's voting systems was unique and they cannot obtain the same access now.  *See* Appellants' Br., Doc. 27, at 33, 51-55.  But that argument rests on a series of misunderstandings about Dr. Halderman's access.  He did not have "unrestricted access to the live system." Appellants' Br., Doc. 27, at

44

53.  He had forensic images.  *Supra*, pp. 8-10.  Dr. Halderman was able to analyze those forensic images, not on the physical EMS, but on a "virtual machine."    Response Exh. 1-E, R.21-7, PageID.1624.    While he did so "without Antrim County providing any passwords," that was not because of any "unique access" he was given.  Appellants' Br., Doc. 27, at 53.  Rather, he used his expertise to "circumvent[]" any requested passwords.  *Supra*, p. 9.  The image that Dr. Halderman obtained was also the same image that ASOG and the *Bailey* plaintiffs had before him, which was collected on December 6 (*id*.)—not "at the time of the incident" (Appellants' Br., Doc. 27, at 53).  It is therefore incorrect that Dr. Halderman's access was "unique."

But more importantly, it is also incorrect that OAN Defendants are incapable of getting now the substantial equivalent of what Dr. Halderman had then.  While they claim that Dr. Halderman's access cannot be "recreated or retroactively accessed," Appellants' Br., Doc. 27, at 54, they make no showing that is the case.  OAN Defendants nowhere suggest that they sought forensic images of the Antrim County system from the Michigan DOS or AG, or that those entities would not or could not have complied with a subpoena requesting them.  Indeed, DOS was accommodating enough to turn over Dr. Halderman's March 23 draft report in response to a subpoena.  *Supra*, p. 13.    Nor  is  there  any  indication  that  the  *same*  forensic  images  that

Dr. Halderman used are unavailable. OAN Defendants do not claim that the images were destroyed, and there is no suggestion in the record that they have been. As the district court correctly recognized, OAN Defendants therefore offer no reason why they cannot obtain precisely what Dr. Halderman had, have one of several existing experts review it, and then ask that expert, rather than Dr. Halderman, "what he saw, what he did, what he found." Appellants' Br., Doc. 27, at 33; Order, R.42, PageID.2205.

While OAN Defendants fault the district court for considering that there are "a substantial number of practitioners in this area," Order, R.42, PageID.2205, doing so was entirely proper given that that the Advisory Committee notes say that whether "the witness is a unique expert" is "[a]ppropriate factor[] for consideration." Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules—1991 Amendment. Nor was the district court's "unique expert" point the basis for its conclusion. Rather, the district court's main consideration was that OAN Defendants did not show that the underlying information they seek is unavailable to them elsewhere. Order, R.42, PageID.2205. It then considered whether Dr. Halderman might be a unique expert, such that OAN Defendants should be allowed to depose him anyway. *Id.* Dr. Halderman is not, the court reasoned, because there are many experts who can do precisely what he did and, in all likelihood, using

46

the same information that he had.  *Id.*

OAN Defendants argue that testimony from a Dominion executive flagged in their motion for reconsideration undermines the district court's analysis on this point.  Appellants' Br., Doc. 27, at 69-70.  But it does not. That executive never testified that Dominion tried to get the same access that Dr. Halderman had but could not do so.  While he did testify at one point that Dr. Halderman had "direct access to the projects, the system," he significantly walked that statement back later.  He clarified that he was "not sure if [Dr. Halderman] had access to the machines"; did not "know exactly what he did"; and might have just had access to "exports from the equipment."  Indicative Ruling Mot. Exh. 8, R.32-9, PageID.2120.  "I don't know," the executive continued, "what access the state provided him with.  It might be in his report."  *Id.*  As explained, it is:  Dr. Halderman's report says he had access to forensic images, not the direct system.  *Supra*, pp. 8-10.  The executive then testified that, with "*that* information," Dr. Halderman "was able to discern what happened in Antrim County."  Indicative Ruling Mot. Exh. 8, R.32-9, PageID.2120 (emphasis added).

This evidence therefore does nothing to "call[] into question" (Appellants' Br., Doc. 27, at 74) the district court's substantial-need and undue-hardship conclusion.  It does not show that the access Dr. Halderman

47

had is now "unavailable or explain why the materials Dr. Halderman examined are somehow irreplicable." Order, R.42, PageID.2205. Nor does it explain why OAN Defendants could not "hire their own expert to evaluate the data." Order, R.28, PageID.1874. While true that the district court did not directly address the deposition testimony in its reconsideration decision, it did not have to. The deposition transcript is dated October 4, 2024 (Indicative Ruling Mot. Exh. 8, R.32-9, PageID.2118)—which is before OAN Defendants filed their opposition to Dr. Halderman's motion to quash (Response, R.21, PageID.1537). The evidence therefore was not "newly discovered" when OAN Defendants raised it in their Rule 59(e) motion. *See A Renewed Mind v. Weatherby*, 675 F. App'x 572, 574 (6th Cir. 2017). As such, it was not an abuse of discretion for the district court to decline to consider it—especially where it does not move the needle.

> 2.   *OAN Defendants offer no reason to upset the district court's exercise of its discretion.*

Because OAN Defendants failed to establish that they can only get the information they want without undue hardship by deposing Dr. Halderman, the district court was well within its discretion in declining to order his deposition under Rule 45(d)(3)(C). That remains true "[e]ven assuming" the importance of the information that OAN Defendants seek. *See Bongartz,* 1994 WL 315240, at*5; *see also S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.,*

763 F. App'x 401, 406 (6th Cir. 2019); *Stampley*, 23 F. App'x at 471. OAN Defendants nonetheless contend that the "importance" aspect of the district court's Rule 45(d)(3)(C) analysis was flawed. Appellants' Br., Doc. 27, at 55-61. While there was nothing improper about the court's analysis, the claimed errors fundamentally do not change the basis for the district court's decision: OAN Defendants can get the information they seek somewhere else.

OAN Defendants primarily argue that this Court should reverse because the district court viewed OAN Defendants' substantial-truth defense in the underlying litigation as "weak," and the changes to Dr. Halderman's report as having "limited utility" to it. Appellants' Br., Doc. 27, at 70-71. But the district court's views of the merits had no bearing on its decision. The court took great pains to explain that, although it viewed OAN Defendants' defense as weak, and the new evidence as offering little support to it, "[t]his does not necessarily defeat the defendants' quest for Dr. Halderman's testimony about the incident if he truly has unique information or a unique perspective." Order, R.42, PageID.2204. It then properly analyzed whether the information that OAN Defendants want can be obtained elsewhere without undue hardship, correctly concluding that it could be. *Id.* at PageID.2204-2205; s*upra*, pp. 41-48. That alone was a sufficient basis for the district court to exercise its discretion against ordering Dr. Halderman's

deposition.  *See Bongartz,* 1994 WL 315240, at*5.

OAN Defendants also claim that the district court improperly "presumed the truth of Dominion's allegations in the underlying lawsuit." Appellants' Br., Doc. 27, at 57.  As their only "example," they point to the opening line of the court's initial quashal order noting that "certain news outlets" have made "demonstrably false statements about the integrity of certain voting equipment systems and their accuracy."  *Id.* at 56 n.6.  That line mentions neither OAN nor Antrim County.  It is a general observation that some statements made by some media outlets about the 2020 election have been proven false—which they have.  *E.g., US Dominion, Inc. v. Fox News Network, LLC,* 293 A.3d 1002, 1039 (Del. Super. Ct. 2023) ("The evidence ... demonstrates that ... none of the [s]tatements relating to Dominion about the 2020 election are true.").  In any event, the district court did not refuse to order Dr. Halderman's deposition based on its view of Dominion's allegations.  It did so because OAN Defendants had not "even attempted to demonstrate 'a substantial need' for Halderman's testimony 'that cannot be otherwise met without undue hardship.'"  Order, R.28, PageID.1874.  Whether the court did or did not presume Dominion's allegations to be true does not affect that conclusion.

OAN Defendants next argue that the court should not have

"presum[ed] the truth" of Dr. Halderman's declaration, in which he averred that he has no evidence that vulnerabilities in Dominion's software were "exploited to affect the outcome of any past election."  Appellants' Br., Doc. 27, at 57-58; Quashal Mot. Exh. 2, R.1-2, PageID.404.  But district courts have broad discretion to make credibility determinations.  *Zell v. Klingelhafer*, 751 F. App'x 641, 648 (6th Cir. 2018).  The court acted well within that discretion here, considering that Dr. Halderman's assertion is one that he has repeatedly expressed in his published works.  *E.g.*, Response Exh. 1-F, R.21-8, PageID.1683; *cf. Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 843 (6th Cir. 2021) (holding district court did not improperly credit affidavit that did not contradict witness's prior testimony).  Nor did OAN Defendants ever suggest below that Dr. Halderman's declaration was not credible.[3]    And again, the court's crediting of Dr. Halderman's declaration does not change the actual basis for its decision: OAN Defendants failed to show that they cannot get the information they want elsewhere without undue hardship.  Order, R.28, PageID.1874.

Finally, OAN Defendants claim that the court misapplied defamation

---

[3] OAN Defendants' suggestion (at 58 n.8) that Dr. Halderman's testimony from another case undermines the credibility of his declaration is unserious. Dr. Halderman's comment that "my wife won't let me testify" was an attempt at humor.  *See* ECF No. 398, at 166:8, *Commer v. Lindell*, No. 22-cv-0119 (D. Colo. June 12, 2025).

law to dismiss the importance of conversations that Dr. Halderman might have had to issues of liability and damages in the underlying litigation. Appellants' Br., Doc. 27, at 59-60, 63-64. They point, in particular, to the district court's statement that OAN Defendants did "not explain what relevance Dr. Halderman's private statements in the immediate aftermath of the Antrim County incident would have for any of their claims or defenses." Order, R.28, PageID.1870. But the court elsewhere broadly acknowledged the relevance of the evidence to both liability and damages. *Id.* at PageID.1867-1868. And, in the end, the court acknowledged that its view on the "utility" of the information "does not necessarily defeat" OAN Defendants' "quest for" Dr. Halderman's testimony. Order, R.42, PageID.2204. What did so was OAN Defendants' failure to show that they can only get that information from Dr. Halderman. *Id.* at PageID.2205.

At bottom, OAN Defendants never showed that the information they seek from Dr. Halderman was unavailable to them elsewhere or that they would suffer undue hardship in obtaining it. Because that alone was the actual basis for the district court's decision, and alone a sufficient one, none of the "merits" errors OAN Defendants assert—which are not even errors—justify reversal.

### B.    That OAN Defendants offered in their briefing below to compensate Dr. Halderman does not justify reversal.

Considering the above, OAN Defendants' belated offer in their briefing below to compensate Dr. Halderman is not a basis for reversal. Under Rule 45(d)(3)(C), subpoenaing parties must show *both* a substantial need and undue hardship "*and* ... ensure[] that the subpoenaed person will be reasonably compensated." *See* Fed. R. Civ. P. 45(d)(3)(C) (emphasis added).

Here, as explained above, OAN Defendants have not met the substantial need and undue hardship requirement. *Supra*, pp. 41-48. Because OAN Defendants need to meet that heavy burden *and* ensure that Dr. Halderman would be compensated for his time, the district court's characterization of OAN Defendants' subpoena as seeking Dr. Halderman's uncompensated testimony is beside the point. *See Schaefer*, 331 F.R.D. at 609-610 (quashing subpoena even though serving party offered compensation because it failed to show substantial need and undue hardship). Even assuming that OAN Defendants' qualified offer of payment satisfies the rule's "ensures" requirement. *See* Response, R.21, PageID.1553 ("OAN is willing to pay [Dr. Halderman's] standard and reasonable hourly rate for the deposition time spent answering OAN's questions provided Dominion does not contend that Halderman is OAN's expert or is attempting to influence his testimony.") (emphasis removed). The district court

therefore acted well within its discretion in quashing the subpoena, notwithstanding OAN Defendants' qualified offer of payment.

## CONCLUSION

The Court should affirm the orders quashing OAN Defendants' subpoena and denying their motion for reconsideration. The district court properly determined that Rule 45(d)(3)(B)(ii) empowered it to quash the subpoena in full. OAN Defendants overwhelmingly seek Dr. Halderman's expert opinion testimony and factual information that does not describe any specific occurrences in dispute. OAN Defendants identify no abuse of discretion or other error warranting reversal of that determination.

The district court also properly exercised its discretion in declining to order Dr. Halderman's deposition under Rule 45(d)(3)(C). OAN Defendants failed to show that they cannot get the information they seek from Dr. Halderman through other sources without suffering undue hardship. Because that failure alone was enough for the district court to exercise its discretion against ordering Dr. Halderman's deposition, the claimed errors surrounding the district court's merits and compensation analyses, if they were in fact errors at all, do not warrant upsetting the district court's decisions.

September 29, 2025

Respectfully submitted,

*/s/ David D. Cross*
David D. Cross
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
Tel.: (202) 346-4000
dcross@goodwinlaw.com

Christopher J.C. Herbert
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
cherbert@goodwinlaw.com

*Counsel for Plaintiff-Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) that the foregoing document complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(d).

1. Exclusive of the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 11,843 words, including footnotes, according to the word count of Microsoft Word, the word-processing system used to prepare the brief.

2. The brief has been prepared in a proportionally spaced typeface in fourteen-point Georgia font.

September 29, 2025

*/s/ David D. Cross*
David D. Cross
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
Tel.: (202) 346-4000
dcross@goodwinlaw.com

56

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

September 29, 2025                                        <u>*/s/ David D. Cross*      </u>
                                                                        David D. Cross

57

## **ADDENDUM**

| Record Entry | PageID # | Document Description |
|---|---|---|
| 1 | 1-49 | Dr. Halderman's Motion to Quash Subpoena ("Quashal Mot.") |
| 1-1 | 54-63 | Exhibit 1-A to Motion to Quash (Deposition Subpoena) ("Quashal Mot. Exh. 1-A") |
| 1-1 | 64-73 | Exhibit 1-B to Motion to Quash (Deposition Subpoena) ("Quashal Mot. Exh. 1-B") |
| 1-1 | 74-91 | Exhibit 1-C to Motion to Quash (Email Correspondence Between Counsel) ("Quashal Mot. Exh. 1-C") |
| 1-1 | 92-305 | Exhibit 1-D to Motion to Quash (Dominion's Complaint) ("Quashal Mot. Exh. 1-D") |
| 1-1 | 309-321 | Exhibit 1-F to Motion to Quash (Document Subpoena) ("Quashal Mot. Exh. 1-F") |
| 1-1 | 322-324 | Exhibit 1-G to Motion to Quash (Email Correspondence Between Counsel) ("Quashal Mot. Exh. 1-G") |
| 1-2 | 399-405 | Exhibit 2 to Motion to Quash (Halderman Declaration) ("Quashal Mot. Exh. 2") |
| 21 | 1536-1572 | OAN Defendants' Response to Motion to Quash ("Response") |
| 21-2 | 1576-1583 | Exhibit 1 to Response (Edwards Declaration) ("Response Exh. 1") |

| 21-2 | 1584-1589 | Exhibit 1-A to Response (Steve Friess Article) ("Response Exh. 1-A") |
| 21-4 | 1590-1596 | Exhibit 1-B to Response (Teresa Lawlor Article) ("Response Exh. 1-B") |
| 21-5 | 1597-1608 | Exhibit 1-C to Response (Halderman Blog Post) ("Response Exh. 1-C") |
| 21-6 | 1609-1613 | Exhibit 1-D to Response (Halderman Tweets) ("Response Exh. 1-D") |
| 21-7 | 1614-1668 | Exhibit 1-E to Response (Halderman March 26, 2021 Report) ("Response Exh. 1-E") |
| 21-8 | 1669-1687 | Exhibit 1-F to Response (Halderman August 2022 Report) ("Response Exh. 1-F") |
| 21-9 | 1688-1696 | Exhibit 1-G to Response (Email Correspondence) ("Response Exh. 1-G") |
| 21-10 | 1697-1699 | Exhibit 1-H to Response (Email Correspondence) ("Response Exh. 1-H") |
| 21-11 | 1700-1701 | Exhibit 1-I to Response (Email Correspondence) ("Response Exh. 1-I") |
| 21-13 | 1705-1708 | Exhibit 1-K to Response (Email Correspondence) ("Response Exh. 1-K") |

| 21-15 | 1712-1727 | Exhibit 1-M to Response (Eric Coomer Deposition) ("Response Exh. 1-K") |
|---|---|---|
| 21-17 | 1741-1751 | Exhibit 1-O to Response (Contract Between MI AG and Halderman) ("Response Exh. 1-O") |
| 24 | 1769-1806 | Transcript of Hearing on Motion to Quash ("Hrg. Tr.") |
| 28 | 1859-1875 | Opinion and Order on Motion to Quash ("Order") |
| 32 | 1881-1909 | OAN Defendants' Motion for Indicative Ruling ("Indicative Ruling Mot.") |
| 32-2 | 1911-1967 | Exhibit 1 to Motion for Indicative Ruling (Halderman March 23, 2021 Report) ("Indicative Ruling Mot. Exh. 1") |
| 32-3 | 1968-1969 | Exhibit 2 to Motion for Indicative Ruling (Outlook Calendar Invites) ("Indicative Ruling Mot. Exh. 2") |
| 32-4 | 1970-2105 | Exhibit 3 to Motion for Indicative Ruling (Redline of Halderman Reports) ("Indicative Ruling Mot. Exh. 3") |
| 32-5 | 2106-2108 | Exhibit 4 to Motion for Indicative Ruling (MDOS Press Release) ("Indicative Ruling Mot. Exh. 4") |
| 32-9 | 2116-2120 | Exhibit 8 to Motion for Indicative Ruling (Nick Ikonomakis Deposition) ("Indicative Ruling Mot. Exh. 8") |

| 42 | 2193-2206 | Opinion and Order on Motion for Indicative Ruling ("Order") |